# United States Court of Appeals
## For the First Circuit

Nos. 12-1264, 12-1463

UNITED STATES,

Appellee,

v.

CARLOS SEVILLA-OYOLA,
a/k/a Carlitos Caridad, a/k/a Viejo,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Thompson, Circuit Judges.

Rafael F. Castro Lang for appellant.
César S. Rivera-Giraud, Assistant United States Attorney, with
whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson
Pérez-Sosa, Assistant United States Attorney, Chief, Appellate
Division, and Thomas F. Klumper, Assistant United States Attorney,
were on brief, for appellee.

June 3, 2014

**THOMPSON, <u>Circuit Judge</u>**. Sometimes it's better to quit while you're ahead. The district judge twice conducted plea colloquies and thrice imposed sentences for Carlos Sevilla-Oyola ("Sevilla"), each one shorter than the last. Still dissatisfied, Sevilla asks us for another bite at the sentencing apple before a different district judge. To support his claim before this court, Sevilla says the district judge lacked authority for actions taken after entry of the first sentence, and flaws in the initial plea colloquy warrant vacation of the first judgment. Alternatively, he says that even if the judge's later actions were authorized, they were plagued by additional errors.

We agree that the district judge lacked statutory authority to act after he entered the original sentence and that the initial plea colloquy was flawed. But we cannot say that the imperfections Sevilla cites justify setting aside the first judgment. Nor can we say, based on the arguments Sevilla puts forth before us, that the first sentence was unreasonable. Accordingly, the first and most severe sentence imposed by the district judge — 327 months plus a consecutive term of life imprisonment — stands. And Sevilla — who until today was facing a total sentence of 405 months — will likely find himself wishing he had left well enough alone.

**BACKGROUND**

On July 14, 2010, Sevilla and 108 codefendants were indicted as part of a vast drug ring operating in and around several public housing projects in Bayamón, Puerto Rico. The indictment charged Sevilla with (1) conspiring to possess narcotics with intent to distribute, in violation of 21 U.S.C. §§ 841(a), 860 ("Count One"), and (2) aiding and abetting his coconspirators in the use and carriage of firearms in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) ("Count Two"). It singled out Sevilla as a leader, manager, and enforcer for the drug-trafficking organization.

**A. The First Guilty Plea**

On August 9, 2011, Sevilla entered into an agreement with the government, pleading guilty to both counts of the indictment. The parties stipulated that Sevilla was accountable for conspiring to possess at least 2 but less than 3.5 kilograms of cocaine. This amount pegged Sevilla's base offense level at 28 under the U.S. Sentencing Guidelines (the "Guidelines"). See U.S.S.G. § 2D1.1. The parties further agreed that Sevilla would be subject to a two-level protected-location increase, see id. § 2D1.2(a)(1); a two-level leadership enhancement, see id. § 3B1.1(c); and a three-level acceptance-of-responsibility reduction, see id. § 3E1.1, resulting in a total offense level of 29. The parties did not come together

-3-

on Sevilla's criminal-history category, but they agreed to forgo seeking further adjustments or departures.

In the agreement, Sevilla acknowledged that the district judge retained his sentencing discretion and was not bound by the parties' accord. Sevilla also waived his right to appeal if the judge "accept[ed] [the] agreement and sentence[d] [him] according to its terms, conditions, and recommendations."

At the change-of-plea hearing that same day, the district judge advised Sevilla of the statutory penalties for the charged offenses based on the stipulated drug quantity: (1) a mandatory minimum term of five years and a maximum term of eighty years of imprisonment as to Count One, see 21 U.S.C. §§ 841(b)(1)(ii), 860; and (2) a consecutive minimum term of five years of imprisonment as to Count Two, see 18 U.S.C. § 924(c)(1)(A)(i).[1]

The judge failed to inform Sevilla that Count Two carried the possibility of a life sentence. See United States v. Ortiz-Garcia, 665 F.3d 279, 282 n.2, 285 (1st Cir. 2011) (explaining that the maximum penalty for an offense under 18 U.S.C. § 924(c)(1)(A)

_____

[1] After setting out the mandatory minimum and statutory maximum penalties on Count One, the judge (somewhat unclearly) told Sevilla he also had "a consecutive term of imprisonment of I think it's five years on account of the firearms." Then, when explaining the Guidelines range that applied to Sevilla under the plea agreement, the judge stated the range for Count One, "plus 60 months mandatory" on Count Two.

-4-

is life imprisonment and is derived from case law).[2]  However, he did draw Sevilla's attention to the penalties mentioned in the plea agreement, which correctly stated that the maximum penalty for Count Two was life imprisonment, and Sevilla said he understood. The judge also neglected to tell Sevilla that he did not qualify for probation, a suspended sentence, or parole.[3]

### B. Pitufo Enters the Scene

The U.S. Probation Office filed Sevilla's pre-sentence investigation report on November 18, 2011.  It applied a four-level leadership enhancement, rather than the two levels agreed upon by the parties, bumping Sevilla's total offense level up to 31.  Based on Sevilla's five prior convictions — including two violent

---

[2] This court did not explicitly recognize that 18 U.S.C. § 924(c)(1)(A) had a maximum penalty of life imprisonment until we decided Ortiz-Garcia in December 2011 — several months after Sevilla's August 2011 plea colloquy.  665 F.3d at 285-86.  However, we explained there that when Ortiz-Garcia pleaded guilty — in June 2010 — the district judge in his case should and did already know the maximum penalty under the statute; he simply forgot to state it at the change-of-plea hearing.  Id. at 282, 285-86.  It appears the same thing happened here, where, as the judge later candidly admitted, he mistakenly missed stating the maximum penalty while taking Sevilla's plea.

[3] Federal Rule of Criminal Procedure 11 ("Rule 11") requires a district judge to address a defendant in open court before accepting a guilty plea in order to ensure the defendant understands the consequences of his plea.  Fed. R. Crim. P. 11(b)(1).  Among other things, as part of this colloquy, the judge must inform the defendant of "any maximum possible penalty" before accepting the plea.  Fed. R. Crim. P. 11(b)(1)(H).  The rule does not require the judge to tell the defendant about eligibility for probation, a suspended sentence, or parole.  See Fed. R. Crim. P. 11(b)(1).

felonies — it also labeled Sevilla a career offender and set his criminal-history category at VI.[4]

Shortly thereafter, Sevilla filed objections to the pre-sentence report as well as a memorandum disputing the augmented leadership enhancement and his designation as a career offender. The Probation Office followed up with an addendum standing by its recommendations.

Then, on January 13, 2012, the Probation Office dropped a bombshell on the proceedings. In a second addendum to the pre-sentence report, the Office alleged for the first time that Sevilla had murdered José Manuel Torres-Morales, a.k.a. "Pitufo" (or, in English, "Smurf"), in front of the federal courthouse in Hato Rey, Puerto Rico, on November 9, 2007. Pitufo was a fellow drug-ring member who was then under federal supervision. The brazen murder of a federal supervisee outside the courthouse rocked the Puerto Rican legal community to its core.

---

[4] Sevilla committed the two most violent offenses roughly one month apart in 1996. First, on May 25, Sevilla and others fired shots at a car carrying three individuals. Sevilla was arrested and charged with attempted murder, among other things. Then, on July 10, while out on state bond, Sevilla again fired shots at a vehicle. This time the car belonged to the state witness protection program. Inside were two police officers and four civilians, including an infant. Only one person was hurt. Sevilla was charged with six more counts of attempted murder and several weapons offenses. He pleaded guilty to both sets of charges on May 7, 1997, and was subsequently sentenced to twelve years for the first shooting and eight years for the second shooting, to run concurrently.

No one has ever been charged with this notorious murder. The Probation Office learned of Sevilla's alleged involvement from a cooperating witness, Carlos Manuel Burgos Rodriguez ("Burgos"), also a fellow drug-ring member, who claimed that Sevilla admitted to killing Pitufo.[5] After reading the allegations in the second addendum, the district judge ordered the government to produce Burgos at Sevilla's sentencing hearing. Sevilla did not object to this order, did not argue the judge could not consider the Pitufo information, and did not ask for a continuation of the hearing.

## C. The First Sentencing Hearing

Sevilla's first sentencing hearing took place on January 25, 2012. Burgos took the stand to testify about Sevilla's alleged role in the Pitufo murder. He was questioned by the government and cross-examined by defense counsel. Notably, defense counsel did not argue that Burgos's testimony was impermissible and instead objected only on the basis that she needed more time to prepare. The district judge denied the objection because the second addendum to the pre-sentence report, filed twelve days prior, provided sufficient notice, and because counsel had not sought a continuance

---

[5] Burgos first mentioned Sevilla's involvement in the Pitufo murder briefly during his testimony before a grand jury. Sevilla suspects the government played some part in notifying the probation officer of this testimony, which led the officer to interview Burgos and to amend Sevilla's pre-sentence investigation report with the Pitufo murder information. But it is unclear from the record how the probation officer in fact learned of Burgos's statements.

before the hearing.  Sevilla subsequently testified on his own behalf, disclaiming any involvement in the Pitufo murder and challenging the trustworthiness of Burgos's testimony.

At the hearing's conclusion, the judge made several findings.  First, considering Sevilla's serious criminal past (especially his prior violent felony convictions), the judge confirmed Sevilla's designation as a career offender who belonged in criminal-history category VI.[6]  Then, considering Burgos's testimony about Sevilla's alleged role in the Pitufo murder, as well as Sevilla's testimony denying any involvement, the judge found that the career-offender and criminal-history-category-VI labels underrated the seriousness of Sevilla's criminal past.[7]

_____

[6] The judge stressed that Sevilla's past convictions were not for so-called "Mickey Mouse" or "heartland" crimes, but rather were "a string of amazing convictions which include crimes of violence" like "[s]hooting at vehicles" and "[t]rying to kill witnesses in a witness protection program while . . . released on bail from the other major case of attempted murder."

[7] Throughout the hearing, the district judge — who had been chief judge of the federal courthouse when Pitufo was killed – expressed his outrage and dismay at the havoc the murder had wreaked on the court system.  For example, he said:

> The murder stopped the operation of this court.
> The murder not only stopped the operation of this
> court for almost a whole day, it was a disaster
> what happened here.  The FBI had to take control of
> the building.  We didn't know where this was coming
> from. Can you imagine, allowing somebody to use the
> perimeter of this court to kill supervisees?
> Imagine getting involved to the point that you're
> basically interfering with the legitimate
> governmental function of administering justice. Can
> you imagine that?  They killed him right in front

Accordingly, the judge departed upward to offense level 38, which is accompanied by a Guidelines sentence range of 360 months to life. Given the depraved nature and devastating impact of Sevilla's offenses, the judge determined that the highest available sentence was appropriate. Consequently, he sentenced Sevilla to life imprisonment.

The following day, the judge issued an order apportioning Sevilla's sentence into 327 months on Count One and life imprisonment on Count Two, to run consecutively.[8] Judgment entered against Sevilla on January 26.

---

of the courthouse. Right in front of the courthouse. . . . It was a horrible thing.

[8] At the January 25 hearing, the judge had said:

I am sentencing the defendant to life imprisonment, and that will include of course the consecutive sentence that had to be imposed on the firearms, because it would be ridiculous to impose a life term plus five years. That doesn't make any sense.

The dissent says this "strongly suggests that Sevilla was sentenced to life imprisonment on Count 1," i.e., above the 80-year statutory maximum, "and a five-year term on Count 2." But on January 26, the judge offered an alternative explanation: On January 25, he had intended "to look at the two counts together and, after making the corresponding departures, sentence the [d]efendant to life imprisonment." Then, realizing that he should have apportioned the sentence between the counts, see United States v. Zavala-Marti, 715 F.3d 44, 51 n.6 (1st Cir. 2013) (explaining that "the proper procedure is to render a separate sentence on each count" (internal quotation marks and citation omitted)), on January 26 he divided the total life sentence imposed on January 25 among Counts One and Two. Sevilla has not challenged the judge's authority to apportion the sentence and treats the January 25 and January 26 sentences as one sentence.

## D. Subsequent Proceedings

A few days later, on February 1, 2012, Sevilla moved to set aside the judgment and to correct, reduce, and reconsider his sentence, citing Federal Rule of Criminal Procedure 35(a) ("Rule 35(a)").[9] Sevilla said the district judge had erred at the sentencing hearing by considering the Pitufo murder where (1) that crime had not been included in the indictment, and (2) according to Sevilla, defense counsel had not been given adequate time to prepare to refute the allegations before the hearing.

Soon after filing, Sevilla's lawyer fell ill and had to undergo emergency surgery. As a result, the district judge could not hold a hearing on Sevilla's motion before Rule 35(a)'s strict fourteen-day deadline expired.

However, on February 8, one day before the fourteen-day buzzer sounded, the district judge sua sponte issued an order purporting to correct Sevilla's sentence under Rule 35(a) on different grounds. The order sought to rectify two alleged sentencing mistakes. First, the judge said he had intended to sentence Sevilla to 960 months on Count One, followed by life imprisonment on Count Two, but he had erroneously entered only 327 months on Count One. Second, the judge pointed out that the

---

[9] Rule 35(a) permits a district judge to correct a sentence within fourteen days after sentencing if it "resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a). More on this later.

-10-

sentence imposed on Count Two was defective under Federal Rule of Criminal Procedure 11 ("Rule 11") because he had not informed Sevilla during the plea colloquy that Count Two carried a maximum penalty of life imprisonment. To correct these errors, the judge upped Sevilla's sentence to 960 months on Count One and reduced it to 60 months on Count Two, to run consecutively for a total of 1020 months (85 years). Amended judgment entered on February 8, 2012.

In the same order, the judge scheduled a hearing a few days later to consider Sevilla's unresolved Rule 35(a) motion from February 1. That hearing was subsequently postponed to February 22 at defense counsel's request.

On February 22, the day of the hearing, Sevilla filed a second motion requesting (1) recusal of the district judge due to bias and personal knowledge; (2) a Santobello hearing to determine whether the government had breached the plea agreement;[10] and (3) vacation of the February 8 judgment because Rule 11 errors at the change-of-plea hearing could not be corrected in a Rule 35(a) order. The motion also highlighted a litany of supposed Rule 11 violations in the plea colloquy beyond the judge's admitted failure to advise Sevilla of Count Two's maximum penalty.[11] Chief among

_____

[10] For those not in the know, Santobello v. New York, 404 U.S. 257, 262 (1971), stands for the proposition that prosecutors must abide by their plea agreements.

[11] Specifically, Sevilla claimed the judge had violated Rule 11 when he failed to:

them was that the judge had neglected to inform Sevilla that parole had been abolished from the federal penal system.  Sevilla maintained that these additional alleged errors could "only be corrected by an appeal and remand, or by allowing [Sevilla] to withdraw his plea," and not by the district judge issuing an order under Rule 35(a).[12]

---

<ol>
<li>inquire as to whether [Sevilla] had the plea agreement translated to him word for word;</li>
<li>ask . . . whether [defense counsel] had translated the plea agreement [for Sevilla];</li>
<li>ask whether [Sevilla] was aware that he had the right to summon witnesses living beyond the jurisdiction of Puerto Rico pursuant to Rule 17;</li>
<li>ask whether [Sevilla] was aware that he had the right to assist his attorney to select a jury of his peers and to execute peremptory challenges and challenges for cause;</li>
<li>ask whether . . . Sevilla was aware that parole had been abolished in the federal system;</li>
<li>ask whether [Sevilla] fully understood the parameters of the waiver of appeal provision;</li>
<li>ask whether [defense counsel] had explained the application of the guidelines to [Sevilla's] case;</li>
<li>ask whether [defense counsel] had reviewed discovery with [Sevilla] and whether he had received discovery of the evidence;</li>
<li>ask whether [Sevilla] had been told that he had a right to be appointed counsel under the Criminal Justice Act if he could not continue to afford to . . . pay a private attorney, if he elected to go to trial.</li>
</ol>

[12] In the motion, Sevilla asked for an opportunity to withdraw his plea, but said he would do so only if the judge first made "specific protective findings of fact and conclusions of law," that, among other things, would require the government to offer him the same plea agreement after withdrawal and would give him time to investigate the Pitufo murder allegations before

-12-

At the hearing that day, the district judge considered both Sevilla's February 1 and February 22 motions.[13]  Afterwards, the judge issued another order under Rule 35(a) — this time purporting to set aside both the original guilty plea and the February 8 amended sentence to remedy his failure at the colloquy to inform Sevilla about the maximum penalty on Count Two and the impossibility of parole.[14]  The judge noted, however, that the plea agreement still stood, and said he would schedule a new change-of-plea hearing after he issued a separate written ruling denying Sevilla's recusal and Santobello requests.

---

resentencing.  But at the hearing that followed, Sevilla's counsel informed the judge that Sevilla "[did] not want to reopen the hearing," and instead wanted to file an appeal, as he did later that day.

[13] As a reminder, unlike the February 22 motion (which criticized the judge's attempt to invoke Rule 35(a)), the February 1 motion asked the judge to act under Rule 35(a).  It claimed the judge had erred by considering the Pitufo murder at sentencing and requested that the judge set aside the original January 26 judgment and correct the original January 26 sentence.

[14] The judge knew that his failure to warn Sevilla that parole was unavailable was not, by itself, a violation of Rule 11.  See Johnson v. United States, 650 F.2d 1, 4 (1st Cir. 1981).  However, "the very purpose of Rule 11 . . . 'is to advise a defendant of the actual consequences of his plea so that he can realistically decide whether to plead guilty.'"  United States v. Rivera-Maldonado, 560 F.3d 16, 20 (1st Cir. 2009) (quoting United States v. Santo, 225 F.3d 92, 98 (1st Cir. 2000)).  And, as the judge explained, his omission regarding parole could have undermined Sevilla's understanding of the consequences of his plea, even though Rule 11 did not expressly require the judge to discuss it.

Later that day, Sevilla filed a notice of appeal from both the amended judgment of February 8 and the February 22 order intended to set aside that judgment.

On February 28, while that appeal was pending, the district judge issued the promised written order denying Sevilla's recusal and Santobello requests. The judge then scheduled a supplemental plea colloquy and resentencing hearing for March 8. He further announced he would not consider the Pitufo murder at the resentencing hearing, as Sevilla had requested in his February 1 motion. To explain his decision, the judge cited such factors as the timing and seriousness of the accusation, the fact that Sevilla had never been charged with that crime, and the judge's own concerns for justice, fairness, and due process.

On March 3, Sevilla moved to vacate the judge's order scheduling the supplemental plea colloquy and resentencing hearing, arguing that the judge had no authority to conduct the colloquy or to further modify his sentence because Rule 35(a) was not an appropriate vehicle for correcting Rule 11 errors.

Thereafter, on March 5, we issued an order deferring our consideration of Sevilla's appeal until after the newly scheduled plea and resentencing proceedings, so that any subsequent appeal could be consolidated with the pending appeal.

On March 6, the district judge denied Sevilla's motion to vacate his order scheduling the supplemental plea and resentencing

-14-

hearings.[15]  Then, on March 8, over Sevilla's objection that a full colloquy was required, the district judge conducted a truncated supplemental plea colloquy to ensure Sevilla understood that the maximum possible penalty for Count Two, specifically, was life imprisonment, and that he was ineligible for parole, probation, or a suspended sentence.  Although defense counsel requested an entirely new colloquy, the judge did not conduct one because he thought there was "no point in repeating" what had already been said.  Instead, the judge advised Sevilla of the information missing from the initial colloquy and asked if Sevilla wanted to abide by the plea agreement.  Sevilla said yes.[16]

Four days later, on March 12, the judge held Sevilla's resentencing hearing.  Even without considering the Pitufo murder, given Sevilla's extensive criminal history, the judge again applied the career-offender guideline and varied upward.  The judge sentenced Sevilla to 345 months on Count One and 60 months on Count

_____

[15] In the March 6 order, the judge explained that "Rule 35(a) and Rule 11 were not the exclusive reasons for setting aside the sentence."  Rather, the judge claimed (for the first time) to have acted also under a grant of common-law authority to reconsider and reduce a sentence upon reflection.  See United States v. Benz, 282 U.S. 304, 306-07 (1931).  Neither party has made a Benz argument on appeal, and therefore we do not address it.

[16] We pause to remind the reader that at the initial colloquy, the judge had drawn Sevilla's attention to the penalties mentioned in the plea agreement — which correctly stated that the maximum penalty for Count Two was life imprisonment — and Sevilla told the judge that he understood.

Two, to run consecutively for a total of 405 months (33 years and 9 months). Judgment entered on March 13, 2012.

On March 27, Sevilla filed an amended notice of appeal, challenging (1) all three judgments (January 26, February 8, and March 13); (2) the February 22 order purporting to vacate the February 8 judgment; and (3) the February 28 order denying his recusal and Santobello requests.

### DISCUSSION

Sevilla raises a panoply of issues on appeal. He claims that (1) the district judge lacked authority to issue the February 8 amended judgment, as well as authority to take all subsequent actions; (2) both the initial and supplemental plea proceedings were defective; (3) the final sentence was unreasonable; and (4) the judge erred in rejecting his recusal and Santobello requests. The government counters that the appeal waiver in the plea agreement bars this challenge. But we bypass this issue because Sevilla's claims, if successful, could invalidate both the plea

itself and the waiver of his right to appeal.[17]  And so we forge
ahead with the merits of Sevilla's appeal.

## A. The District Judge's Authority

### 1. Rule 35(a)

Sevilla first argues that Rule 35(a) did not empower the
district judge to issue the February 8 judgment, which modified the
original January 26 judgment by boosting Sevilla's sentence from
327 months to 960 months on Count One and cutting his sentence from
life imprisonment to 60 months on Count Two.  Consequently, Sevilla
says, the February 8 judgment (and all of the judge's subsequent
actions) was null and void.

On appeal, the government concedes that Rule 35(a) did
not authorize the district judge's actions on February 8.  No
matter, the government says — the judge derived his power to take
subsequent action from 28 U.S.C. § 2255, a habeas corpus

_____

[17] Ordinarily, a court will consider whether a waiver of appeal
is enforceable before proceeding to the merits of the case. See,
e.g., United States v. Acosta-Roman, 549 F.3d 1, 3 (1st Cir. 2008).
This is because "under ordinary circumstances, a knowing, voluntary
waiver of the right to appeal from a sentence, contained in a plea
agreement, ought to be enforced . . . [a]bsent some convincing
countervailing argument." United States v. Teeter, 257 F.3d 14, 23
(1st Cir. 2001) (footnote omitted).  However, a court may opt to go
directly to the merits of an appeal where a defendant who has
entered a guilty plea and agreed to waive his right to appeal seeks
to challenge an aspect of the plea which, "'if successful, would
invalidate both the plea itself and the waiver of his right to
appeal.'" See United States v. Chambers, 710 F.3d 23, 27 (1st Cir.
2013) (quoting United States v. Santiago Miranda, 654 F.3d 130, 136
(1st Cir. 2011)).

provision.[18]  But before we tackle the government's fallback habeas position, we explain why we agree that Rule 35(a) did not empower the judge to act on February 8.

We review issues of law, including the district judge's interpretation of a Federal Rule of Criminal Procedure, de novo. United States v. Leja, 448 F.3d 86, 92 (1st Cir. 2006) (citing United States v. Encarnacion, 239 F.3d 395, 397 (1st Cir. 2001)).

Rule 35(a) empowers a district judge to "correct a sentence that resulted from arithmetical, technical, or other clear error" within fourteen days after sentencing.  Fed. R. Crim. P. 35(a).  The function of Rule 35(a) is narrowly circumscribed: It "permit[s] correction . . . of an illegal sentence."  Hill v. United States, 368 U.S. 424, 430 (1962).  For Rule 35(a) purposes, a sentence is illegal if "[t]he punishment meted out was . . . in excess of that prescribed by relevant statutes, multiple terms were . . . imposed for the same offense, . . . [or] the terms of the sentence itself [were] legally or constitutionally invalid in any respect."  Id.  Rule 35(a) does not, on the other hand, enable a judge to fix errors committed at trial or during proceedings prior to the imposition of sentence.  Id.  As such, Rule 35(a) does not provide a means to revisit possible errors in the plea colloquy.

_____

[18] Section 2255 enables a federal prisoner to move the court that imposed his sentence "to vacate, set aside[,] or correct the sentence" based on one of four grounds.  28 U.S.C. § 2255.  We'll discuss this more fully below.

-18-

See United States v. Vinyard, 539 F.3d 589, 594 (7th Cir. 2008) (finding Rule 35(a) was not an appropriate vehicle for addressing possible Rule 11(b)(1)(H) violation in plea colloquy).

When vacating the January 26 sentence and imposing an amended sentence on February 8, the district judge invoked Rule 35(a) to correct two purported errors: (1) the judge's self-professed mistaken entry of a sentence of 327 months, rather than 960 months, on Count One; and (2) the judge's failure to inform Sevilla during the plea colloquy that Count Two carried a maximum penalty of life imprisonment. Because neither of these alleged infirmities resulted in an illegal sentence, Rule 35(a) by its terms does not provide a cure for either.

First, the 327-month sentence that the judge says he entered mistakenly on Count One was not "illegal" in the sights of Rule 35(a). It was not in excess of statutory limits. See 21 U.S.C. §§ 841(b)(1)(ii), 860 (setting the maximum penalty at eighty years, or 960 months). It did not impose multiple terms for the same offense. See Hill, 368 U.S. at 430. And no one has argued it was otherwise legally or constitutionally invalid. See id.

Second, the Rule 11 defect diagnosed by the judge in the plea colloquy — namely, the judge's failure to tell Sevilla that Count Two was punishable by life imprisonment — occurred before sentencing and, thus, is not a sentencing error. It is therefore

decidedly outside the bounds of the type of glitch that Rule 35(a) is designed to mend.  See id.; Vinyard, 539 F.3d at 594.

Accordingly, like the parties, we conclude that the district judge could not rely on Rule 35(a) for authority to issue the February 8 judgment aiming to remedy mistakes he spotted in the January 26 judgment.

## 2. Section 2255

The question, then, is whether 28 U.S.C. § 2255 gave the judge power to act on or after February 8.[19]

Before us, the government argues for the first time that Sevilla's February 22 motion — requesting recusal, a Santobello hearing, and vacation of the February 8 judgment for lack of authority, as well as alleging a string of Rule 11 errors in the plea colloquy — authorized the judge's actions on or after February 8 because the motion functioned as a collateral attack on Sevilla's conviction and sentence under § 2255.  Sevilla did not caption the motion under any particular rule or statute, but simply dubbed it an "omnibus motion regarding sentencing."  And the district judge

---

[19] As a quick recap, the judge's post-February-8 actions were: (1) on February 22, he issued an order intended to set aside the February 8 amended sentence and the original plea due to Rule 11 errors; (2) on February 28, he issued an order denying Sevilla's recusal and Santobello requests and scheduling a new change-of-plea hearing; (3) on March 8, he conducted a supplemental plea colloquy; and (4) on March 12, he re-sentenced Sevilla.

clearly viewed it as another Rule 35(a) motion.[20]  Nonetheless, because "a motion's character depends upon its substance, not its appellation," United States v. Ortiz, 741 F.3d 288, 291 (1st Cir. 2014), the government says we can and should treat the February 22 motion as a § 2255 challenge based on its content, even though it does not wear a § 2255 label.

We begin with a brief § 2255 primer.  Section 2255 appears in the chapter devoted to habeas corpus and gives a federal prisoner a means to collaterally attack his sentence.  28 U.S.C. § 2255(a).  Specifically, it permits a prisoner to move the court that imposed his sentence "to vacate, set aside, or correct the sentence" because (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack."  Id.

Notwithstanding this broad language, a § 2255 motion alleging a violation of federal law is generally cognizable only if it involves "a fundamental defect [that] inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure."  Hill, 368 U.S. at 428;

---

[20] The February 22 order responding, in part, to the February 22 motion, explicitly states:  "Sentence vacated under Fed. R. Crim. P. 35(a), correcting for clear error emanating from the defective plea colloquy."

see also United States v. Vonn, 535 U.S. 55, 63-64 (2002) (quoting United States v. Timmreck, 441 U.S. 780, 784 (1979)).  By this standard, § 2255 relief is not available to remedy "a failure to comply with the formal requirements of a rule of criminal procedure," absent any evidence of prejudice or other injury to the defendant.  See Davis v. United States, 417 U.S. 333, 346 (1974) (internal quotation marks and citation omitted).  In particular, a defendant will "'rarely, if ever, be able to obtain relief for Rule 11 violations under § 2255,'" United States v. Borrero-Acevedo, 533 F.3d 11, 17 (1st Cir. 2008) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 n.9 (2004)), because such errors seldom result in the type of "complete miscarriage of justice" or proceeding "inconsistent with the rudimentary demands of fair procedure" that deserves redress under the statute, see Timmreck, 441 U.S. at 784 (finding the court's failure to inform defendant of special parole term, in violation of Rule 11, was not a fundamental defect).

Moreover, a defendant usually gets only "one complete round of collateral review" under § 2255.  Melton v. United States, 359 F.3d 855, 857 (7th Cir. 2004); see Munoz v. United States, 331 F.3d 151, 153 (1st Cir. 2003) (per curiam).  Second or successive § 2255 motions are severely limited and require certification by the appropriate court of appeals.  28 U.S.C. § 2255(h); see Castro v. United States, 540 U.S. 375, 377, 382 (2003); Munoz, 331 F.3d at

153. Accordingly, though we may choose to recharacterize a motion styled otherwise as falling under § 2255 based on its content, <u>Trenkler</u> v. <u>United States</u>, 536 F.3d 85, 97 (1st Cir. 2008) (compiling cases), we must be mindful that doing so may deprive a defendant of his chance to bring a second, possibly stronger claim under that statute, <u>see</u> <u>Castro</u>, 540 U.S. at 377, 382; <u>id.</u> at 387 (Scalia, J., concurring).[21]

Against this backdrop, we choose not to recast Sevilla's February 22 motion in a § 2255 mold. No one below - not Sevilla, not the government, and certainly not the district judge - considered the motion under § 2255. Before us, only the government says we should view the motion under § 2255. This was Sevilla's motion, not the government's, and the important concerns outlined above counsel against our recharacterizing the motion under that statute.

---

[21] This risk prompted the Supreme Court to limit the courts' recharacterization powers with respect to <u>pro se</u> litigants (who, presumably, are less aware of the consequences of recharacterization than those with counsel) in the following way:

> [T]he court cannot . . . recharacterize a <u>pro se</u> litigant's motion as the litigant's first § 2255 motion <u>unless</u> the court informs the litigant of its intent to recharacterize, warns the litigant that the recharacterization will subject subsequent § 2255 motions to the law's "second or successive" restrictions, and provides the litigant with an opportunity to withdraw, or to amend, the filing.

<u>Castro</u>, 540 U.S. at 377, 383 (emphasis in original).

-23-

Accordingly, we find that the February 22 motion — which we view as decided only pursuant to Rule 35(a) — did not provide the judge with authority for his post-February-8 actions by way of § 2255, and the January 26 order remained the final order of the court.[22] We therefore need not reach Sevilla's arguments that (1) the supplemental plea colloquy was defective; (2) the final sentence imposed was unreasonable; and (3) the district court erred in not granting Sevilla's February 22 recusal and Santobello requests. Rather, we now turn to Sevilla's direct appeal of the January 26 judgment.

---

[22] Sevilla argued the district judge lost power to act in his case after he filed his first notice of appeal on February 22 challenging both the February 8 amended sentence and the February 22 order purporting to vacate that sentence (though it was not until March 27 that he amended his appeal to include challenges to the original judgment and subsequent orders and judgments). "As a general rule, with only limited exceptions, entry of a notice of appeal divests the district [judge] of jurisdiction to adjudicate any matters related to an appeal." United States v. Martin, 520 F.3d 87, 97 (1st Cir. 2008) (internal quotation marks and brackets omitted) (quoting United States v. Distasio, 820 F.2d 20, 23 (1st Cir. 1987)). "This rule applies with equal force to sentencing." Distasio, 820 F.2d at 23. Thus, Sevilla says, his notice of appeal suspended the judge's power to modify his sentence, and all the judge's later actions were null and void. Sevilla does not explain how his later-in-time February 22 notice of appeal could have divested the judge of jurisdiction for the earlier-in-time February 22 order. But because we find the judge lacked authority pursuant to Rule 35(a) for his post-February-8 actions anyway, we need not spin our wheels trying to pin down Sevilla's argument on this point.

-24-

## B. The Initial Guilty Plea

Most curiously, before us, Sevilla seems to have forgotten what brought him here in the first place. At the February 22 hearing, when the district judge asked Sevilla what he wanted to do about alleged Rule 11 defects in the initial plea colloquy, Sevilla insisted he wanted to address those defects on appeal rather than reopen the plea proceedings. However, he says little in his brief about the impact of Rule 11 errors in the initial colloquy on the first judgment, and instead focuses his attacks on purported errors at the supplemental plea level.

Arguments raised in only a perfunctory and undeveloped manner are deemed waived on appeal. Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Sevilla's entire argument about the effect of Rule 11 errors in the first colloquy on the first judgment is as follows:

> Pursuant to this Court's opinion in [United States v. Ortiz-Garcia, 665 F.3d 279, 287–89 (1st Cir. 2011),] the District Court's failure to inform [Sevilla] at the change of plea hearing that the maximum sentence for [Count Two] was life imprisonment instead of the 5 years mentioned mandates setting aside the final judgment entered on [January 26], where a life sentence was imposed on [Count Two]. . . . The Change of Plea transcript does not inform him of a maximum time of life imprisonment and [it] is by no means clear he would have [pleaded] guilty under those circumstances. The case should be remanded for resentencing before a different District Court judge. (Emphasis added.)

-25-

Though Sevilla has identified an error and a possible argument —
that he might not have pleaded guilty but for the error — he has
done so only "in the most skeletal way, leaving the court to do
counsel's work, create the ossature for the argument, and put flesh
on its bones." Zannino, 895 F.2d at 17. This we will not do. Id.

As a result, Sevilla's Rule 11 claims are not merely
forfeited and subject to plain error review — as they would be
because Sevilla did not object on Rule 11 grounds during the
initial colloquy or move to withdraw his plea in the district
court.[23] See United States v. Anderson, 745 F.3d 593, 598 (1st Cir.
2014); United States v. Ortiz-Garcia, 665 F.3d 279, 285 (1st Cir.
2011) (reviewing underlying Rule 11 claim for plain error because
defendant failed to object to the error or move to withdraw his
plea in the district court); Igartúa v. United States, 626 F.3d

---

[23] The dissent says "Sevilla had no reasonable opportunity to
discover and raise the Rule 11 error during the sentencing hearing,
prior to the sentence's imposition" because the life term on Count
Two was not imposed in writing until January 26, 2012 — the day
after the sentencing hearing. However, this overlooks Sevilla's
failure to object at the plea colloquy on August 9, 2011 — when the
error occurred — or anytime thereafter before the sentence was
imposed. Though Sevilla did eventually raise Rule 11 issues before
the district court and move to withdraw his plea, it was not until
his February 22, 2012 motion — after sentence had been imposed and
after the district judge had sua sponte recognized and attempted to
correct the Rule 11 error (though he lacked power to do so under
Rule 35). And when the judge asked Sevilla at the hearing on that
motion if indeed he wanted to reopen the hearing, Sevilla's counsel
responded that while Sevilla wanted to "stand[] by all his
arguments in the [February 22 motion]," he "[did] not want to
reopen the hearing," and instead wanted to file an appeal, as he
did later that day. Accordingly, were Sevilla's Rule 11 claims not
waived before us, they would at least be forfeited.

592, 603 (1st Cir. 2010) ("[A]rguments that are not raised in a timely manner are forfeited," and "[p]lain error review may be available for forfeited arguments."). Rather, because Sevilla did not adequately challenge these errors on appeal, his Rule 11 claims are waived entirely. See Anderson, 745 F.3d at 598; Igartúa, 626 F.3d at 603 (explaining that plain error review "is seldom available for claims neither raised below nor on appeal").

Though we may, on rare occasion, exercise our discretion to address waived arguments — for instance, when they become available only as a result of intervening changes in law — we see no reason to do so here. See Anderson, 745 F.3d at 598; Igartúa, 626 F.3d at 603 ("Review is unavailable for waived arguments unless the court engages in the rare exercise of its power to excuse waiver." (internal quotation marks and citation omitted)). Furthermore, even if we did exercise our discretion to hear Sevilla's Rule 11 claims, they would not survive the high hurdle of plain error review. See Anderson, 745 F.3d at 598 (citing United States v. Padilla, 415 F.3d 211, 218-19 (1st Cir. 2005) (en banc)).[24] Thus, we turn to Sevilla's first sentence.

---

[24] To demonstrate plain error, Sevilla would need to show that "(1) [a Rule 11] error occurred; (2) the error was plain; (3) the error affected the defendant's substantial rights; and (4) the error 'seriously affected the fairness, integrity or public reputation of judicial proceedings.'" Ortiz-Garcia, 665 F.3d at 285 (brackets omitted) (quoting Rivera-Maldonado, 560 F.3d at 19). To satisfy the third prong, Sevilla must demonstrate there is "'a reasonable probability that, but for the error, he would not have entered the plea.'" Id. at 286 (quoting Dominguez Benitez, 542

## C. First Sentence

It also appears to have slipped Sevilla's mind to challenge his first sentence — 327 months on Count One, followed by a consecutive term of life imprisonment on Count Two — on appeal. In his brief, he mainly focuses on the alleged unreasonableness of the third sentence he received — 345 months on Count One and 60 months on Count Two, to run consecutively for a total of 405 months (33 years and 9 months). But because Sevilla does make some argument regarding one aspect of the first sentence — namely, the district judge's consideration of the Pitufo murder at the first

---

U.S. at 76).

Assuming the judge plainly erred by failing to advise Sevilla that Count Two carried the possibility of a life sentence, see Fed. R. Crim. P. 11(b)(1)(H), Sevilla nevertheless cannot satisfy the third prong of the plain error test. To succeed, Sevilla would have to demonstrate that, if the judge had informed him of Count Two's maximum penalty, there is a reasonable probability he would not have pleaded guilty. But the plea agreement Sevilla signed explicitly stated the correct maximum penalty, and he assured the judge during the colloquy that he understood the maximum penalties listed in that agreement. Cf. Ortiz-Garcia, 665 F.3d at 285, 288 (finding a reasonable probability that defendant would not have entered guilty plea but for Rule 11 error where plea agreement did not include maximum penalty and court did not mention maximum penalty at change-of-plea hearing). So Sevilla cannot meet the third prong, and the judge's failure to warn Sevilla of Count Two's maximum penalty was not plain error.

As for the other alleged Rule 11 violation — the judge's failure to warn Sevilla he was ineligible for parole — Rule 11 does not require a judge to inform a defendant of his parole ineligibility. See Johnson v. United States, 650 F.2d 1, 4 (1st Cir. 1981). Thus, this omission was not error — plain or otherwise.

sentencing hearing — we will not deem this particular argument waived.[25]  Cf. Anderson, 745 F.3d at 598.

We review for abuse of discretion a district judge's decision to consider particular information at sentencing.  United States v. Greig, 717 F.3d 212, 217-18 (1st Cir. 2013).  By statute, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person . . . which a [judge] . . . may receive . . . for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661.  Moreover, a sentencing judge is affirmatively required to consider "the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  And the sentencing judge has discretion to judicially find facts informing the sentence based upon a preponderance of the evidence, "provided that any such fact does not trigger a mandatory minimum punishment or alter a statutory maximum, and that the ultimate sentence remains within the range of penalties set forth in the statute of conviction."  United States v. Doe, 741 F.3d 217, 234 (1st Cir. 2013).

---

[25] In the section of his brief urging the district judge's recusal, Sevilla claims it was wrong for the judge to consider the Pitufo murder during the first sentencing hearing.  However, Sevilla does not reprise his second argument pertaining to the first sentencing from his February 1 motion that defense counsel had not been given adequate time to prepare to refute the Pitufo murder allegations before the first sentencing hearing.  Thus, that argument is waived.  See Anderson, 745 F.3d at 598.

Information about the Pitufo murder — as it was relevant to Sevilla's background, character, conduct, history, and characteristics — is precisely the type of evidence that the sentencing judge is authorized by statute to consider. See 18 U.S.C. §§ 3553(a)(1), 3661. Furthermore, it was within the judge's discretion to find facts about the Pitufo murder by a preponderance of the evidence at sentencing, as the judge's consideration of that murder did not modify the mandatory minimums or statutory maximums applicable to Sevilla, or result in a sentence beyond the range of penalties specified in the statutes of conviction. Sevilla does not argue otherwise before us now.

Accordingly, the judge did not abuse his discretion by considering the Pitufo murder information at Sevilla's first sentencing hearing.[26] As a result, Sevilla's first sentence — 327

_____

[26] The judge's proper consideration of the Pitufo murder, standing alone, also was not evidence of bias warranting the judge's disqualification. Therefore, Sevilla's argument that the judge abused his discretion by refusing to disqualify himself, to the extent it relies on the judge's consideration of this information, fails. See United States v. Snyder, 235 F.3d 42, 46 (1st Cir. 2000) (explaining that we apply an abuse of discretion standard when a trial judge refuses to recuse himself). Furthermore, it was proper for the judge to take into account the Pitufo murder's impact on the community during sentencing. See United States v. Politano, 522 F.3d 69, 74-75 (1st Cir. 2008) (explaining that the sentencing judge is permitted to consider the characteristics of the community in which a defendant's conduct arose and the conduct's impact on the community). Thus the judge likewise did not abuse his discretion by refusing to disqualify himself on that basis.

months on Count One plus a consecutive term of life imprisonment on Count Two — stands.

## PARTING WORDS

We acknowledge that our result may seem harsh. Where Sevilla once faced 405 months' imprisonment, now he must grapple with a life sentence. But Sevilla chose to proceed with this appeal knowing he risked a higher sentence.

At oral argument, we explicitly asked Sevilla's counsel if Sevilla understood that this appeal could subject him to a sentence based on consideration of his alleged involvement in the Pitufo murder and longer than the 405-month term ultimately imposed by the district judge. We sought confirmation that Sevilla wished to appeal anyway. On the spot, counsel asserted that Sevilla understood these risks, but he agreed to call Sevilla to confirm.

A few days later, counsel filed an unresponsive motion that did not address whether Sevilla understood the risks he faced by seeking vacation of the third and most favorable 405-month sentence. We then entered a written order again instructing counsel to inquire whether Sevilla wished to pursue the appeal even though "re-sentencing in this matter presented the risk to [Sevilla] of receiving a sentence greater than his current sentence of 405 months and up to life imprisonment, particularly if the district court were to consider **either** [Sevilla's] alleged involvement in the 'Pitufo' murder **or** calculate a base sentencing

-31-

level and make appropriate upward departures." (Emphasis in original.) Counsel filed a second motion saying he had explained those risks to Sevilla and Sevilla still wished to proceed.

While our order focused on the risk of a life sentence upon re-sentencing before the district court, the propriety of a life sentence was clearly before us in this appeal. And because we expressly warned Sevilla that a life sentence remained on the table, though the outcome we reach is not what Sevilla hoped for, at least it should come as no surprise.

## CONCLUSION

With our work finished, we **affirm** the initial guilty plea and the original January 26 sentence of 327 months on Count One and a consecutive term of life imprisonment on Count Two. We **vacate** all subsequent judgments and orders of the district court.

**-Dissenting Opinion Follows-**

**TORRUELLA, Circuit Judge, Dissenting.** Carlos Sevilla-Oyola ("Sevilla") was sentenced by the district court to 405 months in prison. On appeal, he brings to our court's attention numerous errors. The majority, finding several of these claims meritorious, has granted a most unusual form of "relief" -- life in prison. From that irrational result, I respectfully dissent.

## I. The Comedy of Sentencing Errors

This tale of judicial woe begins at Sevilla's plea colloquy, which occurred on August 9, 2011. There, the sentencing judge informed Sevilla, correctly, that he faced a statutory maximum of eighty years for Count 1 of his indictment, conspiracy to possess narcotics with intent to distribute, pursuant to 21 U.S.C. § 841(a). The judge, however, failed to inform Sevilla of the statutory maximum for Count 2 of his indictment. Although a conviction for aiding and abetting in the use and carry of a firearm in relation to a drug-trafficking crime, pursuant to § 924(c)(1)(A), is punishable by a term of life in prison, the judge only informed Sevilla that Count 2 carried a term of "60 months mandatory." Sevilla pleaded guilty to both counts.

Sentencing proved a confusing process, replete with mistakes and misstatements on the part of the sentencing judge. It began on January 25, 2011, when the sentencing judge orally pronounced Sevilla's sentence. As recited, the sentence was as follows: "life imprisonment, and that will include of course the

consecutive sentence that had to be imposed on the firearms, because it would be ridiculous to impose a life term plus five years. That doesn't make any sense."[27]

On January 26, the sentencing judge set this oral sentence down in writing. In apparent contrast to the prior day's pronouncement, the written sentence imposed a term of 327 months on Count 1 and life imprisonment on Count 2. The judge explained that his oral pronunciation of the sentence had been a misstatement, requiring correction by way of apportionment.[28]

On February 1, 2012, Sevilla filed a motion, seeking a correction, reduction, or modification of his sentence. Before that motion was considered, however, the sentencing judge independently undertook to correct additional errors in Sevilla's sentence. On February 8, 2012, the judge issued a written order. Therein, he stated that although he had "intended to enter an Order apportioning the sentence to 80 years on Count 1 (960 months)," he

_____

[27]Although this statement strongly suggests that Sevilla was sentenced to life imprisonment on Count 1 and a five-year term on Count 2, the next day the sentencing judge proffered a different explanation. He had simply forgotten to apportion the sentence between the counts. See United States v. Zavala-Martí, 715 F.3d 44, 51 & n.6 (1st Cir. 2013). If read as imposed, without the benefit of the sentencing judge's subsequent written clarification, the life sentence on Count 1 would have exceeded the statutory maximum of eighty years.

[28]The sentencing judge explained that he had intended "to look at the two counts together and, after making the corresponding departures, sentence defendant to life imprisonment." As modified, the sentence imposed was not a combined term of life imprisonment, however, but a combined term of life-plus-327-months.

-34-

had mistakenly entered a sentence of 327 months.[29]  In the same order, the judge acknowledged that Count 2 of the written sentence, subjecting Sevilla to life in prison, also "suffer[ed] from a defect": when the judge conducted Sevilla's plea colloquy he failed to mention that this count could carry a maximum term of life in prison.  Undertaking to correct both of these mistakes, the judge entered a new sentence.  This time, Sevilla was sentenced to 960 months' imprisonment on Count 1 and 60 months' imprisonment on Count 2.  The judge purported to act under Federal Rule of Criminal Procedure 35(a).

On February 22, 2012, Sevilla filed another motion, specifically noting the defective Rule 11 plea colloquy and seeking to withdraw his plea.  A hearing on this motion was held the same day.  At this hearing, Sevilla stated that he could seek to appeal the sentence rather than undergo additional corrections at the district-court level.  The sentencing judge admitted that Sevilla could utilize appellate review, but attempted to dissuade him from doing so:

> [COUNSEL]: . . . [H]e could proceed to file a
> Notice of Appeal today, and that would be his
> right to proceed.
> THE COURT: He could, and you are going to get
> with that where we are now, a remand for a --
> a remand to strike the plea and setting the
> matter again in the normal course of events.
> [COUNSEL]: All right.  In light --

---

[29]Correcting this "typographical" error increased Sevilla's sentence on Count 1 by fifty-two years and nine months.

> THE COURT: For new plea negotiations or for whatever, trial, as the case may be.

Eventually, the sentencing judge extended Sevilla's right to appeal by thirty days. Sevilla agreed with this course of action, but stated that he intended to file a "protective Notice of Appeal," so as to preserve his claims in case the court of appeals later determined the judge was, indeed, without power to resentence. With both Sevilla and the government in agreement that the plea colloquy was defective, the judge then issued an order "set[ting] aside the sentence imposed, as well as the plea colloquy that resulted in the Defendant's entry of a plea of guilty."

On February 28, 2012, the sentencing judge published an order that, among other things,[30] set forth a schedule for a supplemental plea colloquy. Sevilla filed another motion, asserting that the sentencing judge had no power to conduct a supplemental plea colloquy or enter additional modifications to his sentence, as Federal Rule of Criminal Procedure 35(a) was not an appropriate vehicle through which to correct Rule 11 errors.

On March 6, 2012, the sentencing judge responded, stating that the "Opinion and Order of February 28, 2012, should have made clear that Rule 35(a) and Rule 11 were not the exclusive reasons

---

[30]The sentencing judge also listed eight reasons why he would not consider the "Pitufo murder" in crafting a modified sentence. As the majority notes, it was within the sentencing judge's discretion to determine whether or not consideration of this uncharged conduct was appropriate. Here, he ultimately determined it was not.

for setting aside the sentence, as defendant contends."[31]  The judge claimed to have acted, as well, under a grant of common-law authority established in a Supreme Court case from 1931.  See United States v. Benz, 282 U.S. 304, 306-07 (1931).

On March 8, 2012, the judge conducted a supplemental plea colloquy.  Sevilla objected, claiming that the initial deficiencies in his plea could only be corrected by conducting a completely new colloquy, not by simply undertaking to supplement the first.  The district court disagreed, finding "no point in repeating" what had been said seven months before, in August 2011.  On March 13, 2012, the judge sentenced Sevilla again.  This time, he imposed a term of 345 months on Count 1 and sixty months on Count 2.  Sevilla filed another notice of appeal, bringing his claims before our court.

## II. **The Rule 11 Error and Its Impact**

Sorting through this procedural mess, the majority concludes, and I agree, that the court had no power under Rule 35(a) to impose either the second or the third sentence.[32]

---

[31]Although "not unsympathetic to the significant time pressures felt by the district courts as they manage heavy dockets with limited resources," see United States v. Millán-Isaac, Nos. 12-1693, 12-1769, 2014 WL 1613683, at *13 (1st Cir. Apr. 18, 2014), I am significantly concerned that such repeated claims of mistake and omission would hamper any defendant's ability to thoroughly understand and respond to the sentence imposed.

[32]For the sake of clarity, I refer to both the original oral iteration of Sevilla's sentence and its corrected written form as a single sentence, the first of three.  As I note below, however, there are significant conflicts between these two versions of Sevilla's sentence that materially impact its legality.

Reasoning that Sevilla did not properly challenge the Rule 11 plea colloquy error either before the district court or on appeal, however, the majority reinstates Sevilla's first sentence. In so doing, it strikes down a prison term of slightly under thirty-four years and puts, in its place, a term of life-plus-327-months. I find that decision to be neither required by law nor supported by reason.

## A. Appellate Waiver

The majority states that Sevilla "says little in his brief about the impact of Rule 11 errors in the initial colloquy." I disagree. Sevilla's brief quite plainly makes this argument:

> Pursuant to this Court's opinion in [United States v. Ortiz-García, 665 F.3d 279, 287-89 (1st Cir. 2011),] the District Court's failure to inform Sevilla-Oyola at the change of plea hearing that the maximum sentence for [count] two was life imprisonment instead of the 5 years mentioned mandates setting aside the final judgment entered on 1/26/12, where a life sentence was imposed in count two. . . . The Change of Plea transcript does not inform him of a maximum time of life imprisonment and [it] is by no means clear he would have plead[ed] guilty under those circumstances. The case should be remanded for resentencing. (emphasis added)

This passage -- appearing in the "argument" section of Sevilla's brief -- is also foreshadowed in his presentation of the facts. Therein, Sevilla states that the sentencing judge "failed to advise [Sevilla] that he faced a potential life sentence as to count two,

informing him only [that] 'you have a consecutive term of imprisonment of I think it's five years on account of firearms.'"

It is true, of course, that arguments raised only in a perfunctory and undeveloped manner are deemed waived on appeal. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Sevilla's argument, however clearly falls outside the scope of our waiver doctrine. Compare United States v. Salimonu, 182 F.3d 63, 74 n.10 (1st Cir. 1999) (deeming waived a claim made "without argument or citation to case law"), with United States v. Dunbar, 553 F.3d 48, 63 n.4 (1st Cir. 2009) (finding that, even where a claim was not stated "artfully" it was not waived where the appellate brief identified relevant facts and cited relevant case law), and Holmes v. Spencer, 685 F.3d 51, 66 (1st Cir. 2012) (holding waiver inappropriate where an appellant's brief "reveals enough of the raw materials" underlying a claim so as to allow the court to have "no trouble reading" his argument).

Sevilla has identified a specific error. See Fed. R. Crim. P. 11(b)(1) ("[T]he court must inform the defendant of, and determine that the defendant understands . . . any maximum possible penalty, including imprisonment, fine, and term of supervised release[.]"). He has provided on-point case law. See Ortiz-García, 665 F.3d at 287-89. He has assessed the identified error under the appropriate doctrinal test. See United States v. Raineri, 42 F.3d 36, 41-42 (1st Cir. 1994) (considering whether

Rule 11 error influenced the defendant's decision to plead guilty). In sum, his presentation -- succinct though it may be -- is in no way grounds for waiver. United States v. Sepúlveda-Contreras, 466 F.3d 166, 170 n.4 (1st Cir. 2006) ("This is not a situation where we are forced to piece together [the defendant's] argument for him, and we therefore find no waiver." (internal citation omitted)).

In fact, the majority admits that Sevilla identified "an error and a possible argument." Nonetheless, omitting mention of the fact that this argument was also undergirded by specific reference to case law, it goes on to baldly assert that Sevilla's claim was pleaded "in the most skeletal way, leaving the court to do counsel's work." See Zannino, 895 F.2d at 17. Given that Sevilla has identified a factual error, highlighted governing precedent, and applied that law to the facts at hand, however, I fail to see what "work" counsel has left undone. In light of the content of Sevilla's brief, the assertion that his claim has been waived is simply unsupported. Cf. United States v. Watson, 695 F.3d 159, 166-67 (1st Cir. 2012) (waiving an argument presented only as "an oblique suggestion," absent any reference to applicable case law or a governing standard); DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 34 (1st Cir. 2001) ("Simply noting an argument in passing without explanation is insufficient to avoid waiver.").

If our standard for escaping waiver required that arguments be pled to the highest degree of artfulness, or that they

be situated in the most persuasive and logical place within an appellant's brief, I might well find myself in agreement with the majority. For good reason, however, that is not our rule. As it stands, we require only that an argument be raised, and raised squarely. See, e.g., Sepúlveda-Contreras, 466 F.3d at 170 n.4; Dunbar, 553 F.3d at 63 n.4. This is a requirement that Sevilla has more than met.

The illogical nature of the majority's holding is made even more apparent when considered in context. After all, what reasonable defendant would expend any more than a succinct portion of his or her brief arguing against a sentence which had already been vacated by the sentencing judge, and for which the government was not advocating? See United States v. Ayala-Vázquez, Nos. 11-2347, 12-1540, 2014 WL 1810703, at *13 (1st Cir. May 2, 2014) (holding that a "perfunctory statement" was sufficient to avoid waiver where it served to put the court on notice of a clearly applicable argument). That Sevilla had the foresight even to include this argument in his brief, perhaps to ward off just such an overly formalistic and strained reading as the majority now adopts, is in itself impressive. Still, the majority now demands that he should have expended more of his appellate efforts tilting at windmills. I cannot agree that this claim was waived on appeal.

## B. Plain-Error Review

The majority continues on to say that, even if Sevilla's Rule 11 claim were not waived, it would still fall under plain-error review, because "Sevilla did not object on Rule 11 grounds during the initial colloquy or move to withdraw his plea in the district court."

It is true that Sevilla did not object at his plea colloquy.[33] However, Sevilla's February 22, 2012, motion explicitly put forth this error as grounds for withdrawing his plea. In fact, elsewhere in its opinion, when discussing Sevilla's motion, the majority acknowledges that fact. Recognizing that a motion to withdraw was filed, the majority instead rests its forfeiture finding on the subsequent motion hearing, in which Sevilla stated that he did not "want to reopen the hearing." A thorough review of that hearing's transcript, however, shows that Sevilla's preferred course was significantly less clear than the majority purports:

> [COUNSEL]: . . . he does not want to reopen the hearing and stands by all his arguments in the pleading filed today.
> THE COURT: He doesn't want to reopen the hearing?
> [COUNSEL]: Only because of all the arguments we've presented, that we understand that the

---

[33]At Sevilla's January 25, 2012, sentencing hearing, the judge did not impose a life sentence on Count 2. Rather, this term was first imposed in writing on January 26, 2012. Therefore, Sevilla had no reasonable opportunity to discover and raise the Rule 11 error during the sentencing hearing, prior to the sentence's imposition.

> Rule 11 cannot be cured by Your Honor's Rule
> 35(a) motion.
> THE COURT: A Rule 11 --
> [COUNSEL]: That would be a forfeiture --

Read in context, Sevilla's statement was intended specifically to preserve on appeal the complaint that the sentencing judge was acting beyond his power -- a claim the majority has since deemed meritorious. At the same time, however, Sevilla purported to "stand by all" of his arguments, including the request to withdraw his plea.

Certainly, this portion of the record invites confusion. Its apparently contradictory statements, however, do not require that our court completely ignore the fact that Sevilla clearly and expressly motioned to withdraw his plea. Cf. United States v. Isom, 85 F.3d 831, 833-39 (1st Cir. 1996) (considering on the merits a defendant's claim that he should have been able to withdraw his plea, notwithstanding the fact that the defendant orally vacillated between requesting the right to withdraw and stating an intent to stand by that plea). Moreover, when presented with Sevilla's motion, the sentencing judge -- who repeatedly proclaimed that he retained jurisdiction over the issue[34] --

---

[34]When Sevilla queried whether the court's ability to withdraw the plea was impacted by a sentence already having been imposed, the sentencing judge responded "it doesn't matter." That proclamation ignores the plain text of Federal Rule of Criminal Procedure 11(e), which allows district courts to withdraw pleas for "any fair and just reason" only before the sentence is imposed. Fed. R. Crim. P. 11(e). Thus, we might chalk this up as one more error on the growing list of the sentencing judge's missteps. It is

considered and agreed with Sevilla's argument. That the district court attempted to effectuate the withdrawal of Sevilla's plea in a manner beyond its power is most certainly an error -- the court's own -- but it is not an error that, in my view, negates the fact that Sevilla clearly raised this claim, and it was squarely considered. In fact, I can think of no better evidence that the Rule 11 claim was raised than that which is present here: the sentencing judge awarded the relief sought. He withdrew the plea.

At the risk of piling on, I note that even if this court blinded itself to the clear record evidence that Sevilla's claim was raised and considered, plain-error review would be wholly inappropriate. Forfeiture of claims, after all, is not intended to be a "technicality or a trap for the indolent." Nat'l Assn. of Social Workers v. Harwood, 69 F.3d 622, 627 (1st Cir. 1995). To the contrary, the doctrine is intended to protect key values of judicial economy and fairness, and our court has warned not to

---

significantly less clear, however, that -- once considered -- Sevilla's motion would consequently be subject only to plain-error review. The Supreme Court has explained that Rule 11(e) plays an important role in separating "meritorious second thoughts . . . and mere sour grapes over a sentence once pronounced." United States v. Vonn, 535 U.S. 55, 72 (2002) (discussing Rule 32(e), which was later moved to Rule 11(e)). Vonn, however, dealt with a more typical case, in which the claim was first raised on appeal, and its holding was limited to those facts. See id. at 71-74 (holding that a claim brought only on direct appeal is subject to plain error review); see also United States v. Borrero-Acevedo, 533 F.3d 11, 15 (1st Cir. 2008) (reasoning that a Rule 11 issue raised for the first time on appeal was reviewed for plain error); United States v. Jiménez, 512 F.3d 1, 3 (1st Cir. 2007) (same).

prize consistency in its application over reason and equity. <u>Id.</u>; <u>see also</u> <u>United States</u> v. <u>La Guardia</u>, 902 F.2d 1010, 1013 (1st Cir. 1990) ("When all is said and done, 'rules of practice and procedure are devised to promote the ends of justice, not to defeat them.'" (alteration and citation omitted)).

Our precedent acknowledges that "[c]ontext is important," <u>United States</u> v. <u>Gallant</u>, 306 F.3d 1181, 1187 (1st Cir. 2002), and that there are situations where "it simply would be unfair and unwise as a matter of policy to hold that [the defendant] forfeited the argument," <u>id.</u> at 1189. This case, where the sentence was vacated below and no party argues for its imposition on appeal, is clearly one such situation. After all, this is a far cry from a case where our court has been "deprived . . . of useful factfinding," <u>Harwood</u>, 69 F.3d at 627, or of "the district judge's insights into the point," <u>Sandstrom</u> v. <u>ChemLawn Corp.</u>, 904 F.2d 83, 87 (1st Cir. 1990). Rather, the record on the issue is fully developed, and the sentencing judge's view on the nature and effect of the error is more than clear. Similarly, the government was clearly put on notice of this claim and had every opportunity to respond. <u>Harwood</u>, 69 F.3d at 628 ("The absence of unfairness has a definite bearing on a decision to overlook this type of procedural default."). At the February 22, 2012, motion hearing, the sentencing judge specifically asked the government if it agreed that allowing Sevilla to withdraw his plea was necessary, and the

government answered affirmatively. The government's appellate brief also never suggests either that Sevilla's sentence is still intact, or that it should be.

Moreover, in imposing the sentence orally, the judge did not sentence Sevilla to life in prison on Count 2. At best -- adopting the sentencing judge's rather strained explanation wholesale -- the judge imposed a general sentence, without apportionment between the counts. This robbed Sevilla of a significant opportunity to uncover and object to the Rule 11 error prior to the final imposition of his sentence. See United States v. Dominguez Benitez, 542 U.S. 74, 79 (2004) (applying plain-error review to a claim of Rule 11 error where no objection was made "[a]t the sentencing hearing"); United States v. Mateo, 179 F. App'x 64, 65 (1st Cir. 2008) ("[O]ur review is for plain error, unless Mateo was not afforded a sufficient opportunity to present to the district court the argument which forms the basis of this appeal." (citations omitted)); United States v. Cortés-Claudio, 312 F.3d 17, 24 (1st Cir. 2002) ("[A] post-sentence objection is not necessarily required to preserve the issue for appeal if the defendant could not reasonably have anticipated the issue would arise until after the court ruled."); see also United States v. Delgado-Hernández, 420 F.3d 16, 20 (1st Cir. 2005) (applying plain-error review where the defendant had "ample opportunity" to object prior to the sentence's imposition (quoting United States v.

<u>Negrón-Narváez</u>, 403 F.3d 33, 37 (1st Cir. 2005)). There is simply no sense of fairness or equity in allowing one error by the sentencing judge to shield another error from our review.[35] Even had Sevilla's claim not been clearly raised and treated, the facts here provide precisely the sort of "context" that counsels against the overly rigid application of plain-error review. <u>See</u> <u>Gallant</u>, 306 F.3d at 1187.

Before the court below, Sevilla sought to withdraw his plea, the government did not object, and the sentencing judge awarded the relief sought. The plea was withdrawn and the sentence vacated. To now hold that Sevilla never brought this claim to the

---

[35]Were there any question that this sentence requires remand, I also note that where the oral and written sentences materially conflict, the oral generally controls. <u>See</u> <u>United States</u> v. <u>Meléndez-Santana</u>, 353 F.3d 93, 100 (1st Cir. 2003), <u>overruled, in part, on other grounds by</u> <u>United States</u> v. <u>Padilla</u>, 415 F.3d 211 (1st Cir. 2005). Our court has previously held that some deviations in the terms of supervised release or restitution payments, where the defendant was notice of those terms, were not material. <u>See</u> <u>United States</u> v. <u>Ortiz-Torres</u>, 449 F.3d 61, 74 (1st Cir. 2006); <u>United States</u> v. <u>Vega-Ortiz</u>, 425 F.3d 20, 22 (1st Cir. 2005); <u>United States</u> v. <u>Ferrario-Pozzi</u>, 368 F.3d 5, 9 (1st Cir. 2004). We have never gone nearly so far, however, as to say that a significant redistribution between counts of imprisonment was not a conflict. Here, viewing the sentencing judge's proffered explanation about apportionment with the incredulity I believe it is due, given the clarity of his oral statement, the judge changed the sentence on Count 1 from life to 327 months and on Count 2 from sixty months to life. In light of that clear conflict, it would be the oral sentence that binds Sevilla, and the oral sentence is clearly illegal as surpassing the stipulated and accepted statutory maximum for Count 1. <u>See</u>, <u>e.g.</u>, <u>Blakely</u> v. <u>Washington</u>, 542 U.S. 296, 303-04 (2004).

court's attention is quite a bait and switch.  Plain-error review is simply inappropriate in this circumstance.

## C. Remand to the District Court

There is little question that this Rule 11 error was not harmless, such that the sentence cannot stand, see Fed. R. Crim. P. 11(h) ("A variance from the requirements of this rule is harmless error if it does not affect substantial rights."), and -- as expected in a case where the government agrees that the sentence should not be imposed -- the government makes no attempt to prove otherwise.  See United States v. Olano, 507 U.S. 725, 734 (1993) (stating that the burden of proving that an error was harmless is on the government).  Moreover it is the sentencing judge who is best positioned to assess what, if any, impact the Rule 11 error had on Sevilla's understanding of his plea.  See, e.g., United States v. Cotal-Crespo, 47 F.3d 1, 5 (1st Cir. 1995) (noting that Rule 11 requires a sentencing judge to ascertain that the defendant's plea is "voluntary and intelligent" (internal quotation marks citation omitted)).  On February 22, 2012, the sentencing judge made clear that, "I have to set aside the plea, because the plea is invalid.  And if the plea is invalid, the sentence is invalid."  He went on to state that he was "correcting for clear error emanating from the defective plea colloquy," and that, in this case, "the consequences of an imperfect colloquy and the potential sentence are of real significance to the Defendant."

Thus, the harmfulness of this error is clear, and nothing gleaned from the appellate record shows otherwise. Remand is necessary.

### III. **Parting Words**

Sevilla's sentencing was fraught with mistakes, misstatements, and omissions on the part of the sentencing judge. The unique posture of this case, arising from a sentencing replete with errors of the court's own making, and concerning an error that no party seeks to defend, is well fit for a simple resolution: remand for a correction of the Rule 11 error and imposition of a new sentence. Instead, the majority now <u>sua</u> <u>sponte</u> chooses to summarily impose the first sentence, which the district court judge himself determined to be erroneous and improper, and which no party has sought to defend on appeal. In so doing, the majority -- from a cold appellate record, and in contravention of the intent and discretion of the sentencing judge -- has increased Sevilla's sentence from just under thirty-four years to life in prison. This life sentence is based in no small part upon uncharged conduct which the district court, in its discretion, ultimately deemed improper to consider in this case.

In attempting to defend this resolution, the majority states that Sevilla was put on notice of the fact that, upon remand and resentencing, his ultimate sentence might be greater than the 405 months on appeal. That notice, however, never so much as hinted at the idea that our court might short-circuit the accepted

-49-

practice of remand, which would have provided Sevilla with a chance to be heard at a new sentencing hearing, and instead simply impose a sentence significantly higher than that from which he appealed.[36]

From this result, a pyrrhic victory if there ever was one, I respectfully dissent.

---

[36]I know of no other case -- and the majority cites to none -- in which an appellate court undertook to put in place a higher sentence than that from which the defendant's appeal was taken. The unusualness of this situation is surely cold comfort to Sevilla, who (as the majority suggests) will undoubtedly "wish[] he had left well enough alone." I hope, however, that it might mitigate the chilling effect of this result, such that future defendants are not made fearful of bringing even meritorious claims on appeal. While the majority seems to chide Sevilla for not "quit[ting] while [he was] ahead," I see no humor or harm in a defendant attempting to bring to our court's attention a heavily flawed sentencing process. If Sevilla is seeking "another bite at the sentencing apple," our court would do well to recognize that this is because his first was so thoroughly rotten.