# United States Court of Appeals
## For the First Circuit

No. 10-2323

UNITED STATES OF AMERICA,

Appellee,

v.

SAMUEL ORTIZ-GARCÍA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Stahl, Circuit Judges.

Rafael F. Castro Lang, by Appointment of the Court, for appellant.
Vernon B. Miles, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, and Thomas F. Klumper, Assistant United States Attorney, were on brief for appellee.

December 7, 2011

**STAHL**, <u>Circuit Judge</u>.  Defendant-appellant Samuel Ortiz-García (Ortiz) executed a plea agreement and entered a guilty plea without ever having been informed that the maximum penalty for the crime to which he was pleading guilty was life imprisonment.  Ortiz ultimately received a sentence of 360 months, though his plea agreement recommended 120 months.  Ortiz argues that the waiver of appeal provision in his plea agreement is unenforceable, that the district court violated Rule 11 by failing to inform him of the maximum penalty at his change-of-plea hearing, and that the court violated Rule 32 by failing to inquire at the sentencing hearing whether Ortiz had reviewed the pre-sentence investigation report with his attorney.  Because we find that the waiver is unenforceable and that the Rule 11 violation constituted plain error, we vacate and remand for a new change-of-plea hearing.

## I. Facts & Background

We recite the facts only as they are relevant to this appeal, drawing from the plea colloquy, the unchallenged portions of the pre-sentence investigation report (PSR), and the sentencing hearing transcript.  <u>United States</u> v. <u>Mercedes Mercedes</u>, 428 F.3d 355, 357 (1st Cir. 2005).  On May 12, 2007, Ortiz and two other individuals attempted to steal the car of Gilberto Santiago-Quiñones (Santiago).  Santiago and his passenger confronted the men, and an altercation ensued, in which Ortiz does not appear to have been involved.  After the fight was over, Santiago and his

-2-

passenger got back into the car to try to leave, but Ortiz's co-defendant, Agustín Rodríguez-Adorno (Rodríguez), blocked their way. An unidentified individual then said, "He's tough. Shoot him." Ortiz approached the driver's side of the car and fired multiple shots into the car, killing Santiago.

A grand jury returned a four-count indictment, charging Ortiz, Rodríguez, and another individual with: (1) conspiring to commit a carjacking with intent to cause death or serious bodily harm, in violation of 18 U.S.C. §§ 371, 2119 (Count One); (2) aiding and abetting in a carjacking that resulted in a death, in violation of 18 U.S.C. § 2119(3) (Count Two); (3) aiding and abetting in the use, carriage, and discharge of a firearm in furtherance of, during, and in relation to the commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Three); and (4) aiding and abetting one another in causing the death of another person through the use of a firearm, in violation of 18 U.S.C. § 924(j) (Count Four).[1]

On June 9, 2010, Ortiz entered into a plea agreement with the government, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B). Under the terms of that agreement, Ortiz agreed to plead guilty to Count Three of the indictment:

---

[1] The indictment charges, and the government's brief lists, violations of "18 U.S.C. § 2119(3) and 2," "18 U.S.C. § 924(c)(1)(A)(iii) and 2," and 18 U.S.C. § 924(j) and 2." Because it is unclear what statutory provision "and 2" refers to in each instance, we have omitted that language here.

discharging a deadly weapon during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). In exchange, the government recommended a sentence of 120 months. As part of the plea agreement, Ortiz accepted the district court's "jurisdiction and authority to impose any sentence within the statutory maximum set forth for the offense." If the district court chose to impose a sentence "up to the maximum established by statute," Ortiz could not "for that reason alone, withdraw a guilty plea," and would remain bound to fulfill all of the obligations of the plea agreement. Nowhere in the agreement, however, did the government include the maximum penalty under 18 U.S.C. § 924(c)(1)(A)(iii), which is life imprisonment.[2] The "statutory penalties" section of the agreement simply stated that the crime was punishable "by imprisonment of not less than ten (10) years," a fine not to exceed $250,000.00, or both, and a term of supervised release of no more than three years.

The agreement also contained a waiver of appeal section, which read as follows: "The defendant hereby agrees that if this Honorable Court accepts this agreement and sentences him according to its terms and conditions, defendant waives and surrenders his right to appeal the judgment and sentence in this case."

---

[2] As we explain in more detail below, a complicating factor in this case is that the relevant statutory text does not include a maximum penalty; the statute only specifies a mandatory minimum of "not less than 10 years." 18 U.S.C. § 924(c)(1)(A)(iii). The maximum penalty of life imprisonment is thus derived from case law.

At Ortiz's change-of-plea hearing on June 10, 2010, the district court informed Ortiz that the minimum statutory penalty for the offense charged in Count Three was "imprisonment of not less than ten years if the firearm is discharged," but the court did not mention the maximum penalty. Ortiz did not object to this omission at the hearing. The district court did confirm Ortiz's understanding that the court could impose a sentence more or less severe than the one recommended in the agreement and that the court's sentencing calculation would depend in part on its review of the PSR. The court also informed Ortiz that, if the court accepted the plea agreement and sentenced Ortiz according to its terms, Ortiz would waive and surrender his right to appeal. A sentencing hearing was scheduled for September 16, 2010.

The government first referenced the maximum penalty of life imprisonment under 18 U.S.C. § 924(c)(1)(A)(iii) in an initial PSR filed on September 3, 2010 and an amended PSR filed on September 10, 2010. It is unclear, however, whether the government's belated attempt to notify Ortiz that he might receive a life sentence was successful. Because Ortiz did not receive the PSR at least 35 days before his sentencing hearing, as required by Federal Rule of Criminal Procedure 32(e)(2), Ortiz's counsel filed a motion to continue the hearing. In that motion, Ortiz's counsel stated that he "came to discuss [the PSR and amended PSR] with [his] client yesterday, September 13, 2010, barely three (3) days

from the sentencing date." Ortiz's counsel further stated that he would normally advise his client to waive the 35-day notice period required by Rule 32(e)(2), but due to the nature of the case and "the need to thoroughly study the reports and further discuss with [his] client the contents of these," he was requesting a continuance of the sentencing date. The district court rescheduled the hearing for October 21, 2010.

Four things happened at the sentencing hearing that are important here. First, the district court failed to confirm whether Ortiz had in fact reviewed the PSR with his attorney. Second, the court informed Ortiz that the maximum sentence under 18 U.S.C. § 924(c)(1)(A)(iii) was life imprisonment. Third, the court imposed a sentence of 360 months, finding that the sentence to which the parties had agreed, 120 months, did not "reflect the seriousness and aggravated nature of the offense." Fourth, after informing Ortiz that he had waived his "right to appeal substantive issues regarding the conviction and sentence," the district court went on to say, "I must tell you, Mr. Ortiz, that because the Court has not sentenced you according to the terms and conditions of the Plea Agreement, you do have the right to appeal." Ortiz did not object to the court's failure to inquire about the PSR, nor did he ask that his plea be vacated once the court informed him of the maximum penalty.

-6-

Ortiz's co-defendant, Rodríguez, elected to go to trial. Rodríguez argued that Santiago's death had been the result of a street fight, not an attempted carjacking. On June 30, 2010, a jury convicted Rodríguez of Counts One and Two but acquitted him as to Counts Three and Four. Rodríguez received a sentence of 180 months' imprisonment.

## II. Discussion

### A. <u>The Waiver of Appeal</u>

We begin by addressing the waiver of appeal that Ortiz executed as part of his plea agreement, which, if enforceable, would preclude our consideration of the alleged Rule 11 and Rule 32 violations.

A waiver of appeal is enforceable "if it is valid and the defendant's claim lies within its scope." <u>United States</u> v. <u>Padilla-Colón</u>, 578 F.3d 23, 28 (1st Cir. 2009). For a waiver to be valid, the defendant must have entered into it knowingly and voluntarily. <u>United States</u> v. <u>Teeter</u>, 257 F.3d 14, 24-25 (1st Cir. 2001). To determine whether a defendant's claim falls within the scope of an otherwise valid waiver, we examine what the parties agreed to, interpreting the agreement under basic contract principles. <u>United States</u> v. <u>Acosta-Roman</u>, 549 F.3d 1, 3 (1st Cir. 2008). We construe any ambiguities in the waiver of appeal

provision in favor of allowing the appeal to proceed.  United States v. Fernández-Cabrera, 625 F.3d 48, 51 (1st Cir. 2010).[3]

In this case, Ortiz agreed to waive his right to appeal the district court's judgment and sentence if the court: (1) accepted the agreement; and (2) sentenced Ortiz according to the agreement's terms and conditions.  Those terms and conditions included a recommended sentence of 120 months and a provision confirming that the district court had sound discretion to impose "any sentence within the statutory maximum set for the offense to which the defendant pleads guilty."  Nowhere in the agreement, however, did the government specify the maximum penalty, which was life imprisonment.  The agreement merely listed the statutory minimum of "imprisonment of not less than ten (10) years."

The government argues that Ortiz's waiver of appeal is enforceable because the district court, at the change-of-plea hearing, ensured that Ortiz had knowingly and voluntarily entered into the waiver and then accepted Ortiz's plea of guilty, which the government equates with having accepted the plea agreement itself. The government further contends that Ortiz's 360-month sentence falls within the scope of what Ortiz consented to in the plea

---

[3] Though we need not reach the issue here, even if a defendant entered into an appellate waiver knowingly and voluntarily and his claim lies within the scope of that waiver, we may refuse to enforce the waiver if doing so would result in a miscarriage of justice.  Sotirion v. United States, 617 F.3d 27, 33 (1st Cir. 2010).

agreement, which only promised that the government would recommend a sentence of 120 months.[4]

To determine whether a defendant entered into a waiver of appellate rights knowingly and voluntarily, we examine the text of the plea agreement and the content of the change-of-plea colloquy. Teeter, 257 F.3d at 24. We first confirm that the written agreement contains a clear statement elucidating the scope of the waiver. Id. We have previously upheld waivers of this exact nature, though we emphasize again today that it would be better practice, given "the frequency of appeals involving waivers," for the government to draft waiver provisions that "make specific reference to any terms and conditions of the plea agreement that are not intended by the parties to be covered by the waiver." Acosta-Roman, 549 F.3d at 4 n.3 (emphasis in original).

Given that the text of the waiver provision was clear enough on its face, we next examine the transcript of the change-of-plea hearing to ascertain whether the court's interrogation sufficed "to ensure that the defendant freely and intelligently

_____

[4] The government urges us to disregard the district court's statement at the sentencing hearing that Ortiz had a right to appeal because the court had not sentenced him according to the plea agreement's terms and conditions. Because we find that Ortiz's waiver of appellate rights was not knowing and voluntary, we need not address whether the district court in fact sentenced Ortiz according to the plea agreement's terms and conditions, such that Ortiz's claim would fall within the scope of the waiver. See United States v. McCoy, 508 F.3d 74, 77 (1st Cir. 2007) ("Even a knowing and voluntary appeal waiver only precludes appeals that fall within its scope.").

agreed to waive [his] right to appeal." <u>Teeter</u>, 257 F.3d at 24. This includes an inquiry into whether the district court informed the defendant of the ramifications of the waiver. <u>See, e.g.</u>, <u>Acosta-Roman</u>, 549 F.3d at 3. While the district court did question Ortiz specifically about his understanding of the waiver provision, the court failed to comply with Rule 11(b)(1)(H)'s mandate that the court inform the defendant of, and ascertain that the defendant understands, "any maximum possible penalty."[5] The court did neither. Perhaps this error could have been mitigated if the plea agreement had included the maximum penalty, or there was other evidence that the defendant had been informed of and understood the maximum penalty. But there is no such evidence. Furthermore, any opportunity the court might have had at the sentencing hearing to cure the omission and provide Ortiz with time to consider withdrawing his plea was marred by other mistakes, which we describe later.

Under the circumstances, we are not convinced that Ortiz's plea was knowing, and we therefore choose not to enforce the waiver. We can thus reach the merits of Ortiz's claim.

---

[5] Rule 11(b)(1)(H) refers to the "maximum possible penalty" and not to the "statutory penalty" or "statutory maximum." It therefore does not provide an exception for situations like this one, in which the statute itself does not specify a maximum.

**B.  The Rule 11 Violation**

We review Ortiz's underlying Rule 11 claim for plain error, because Ortiz failed to object to the error or move to withdraw his plea in the district court.  See United States v. Vonn, 535 U.S. 55, 59 (2002); United States v. Rivera-Maldonado, 560 F.3d 16, 19 (1st Cir. 2009).  In order to establish plain error, a defendant must show that: (1) an error occurred; (2) the error was plain; (3) the error affected the defendant's substantial rights; and (4) the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." Rivera-Maldonado, 560 F.3d at 19 (quoting Vonn, 535 U.S. at 62-63) (alteration in original) (internal quotation marks omitted).

Rule 11 requires that the district court inform the defendant during the plea colloquy of "any maximum possible penalty, including imprisonment, fine, and term of supervised release." Fed. R. Crim. P. 11(b)(1)(H).  The parties agree that the district court failed, at the change-of-plea hearing, to inform Ortiz of the maximum penalty for discharging a dangerous weapon in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A)(iii).  The parties also agree that the plea agreement itself failed to specify the maximum.

We begin with a note about the maximum penalty under 18 U.S.C. § 924(c)(1)(A).  The statute does not include an express maximum.  Rather, the statute provides escalating minimums, based

-11-

on whether the firearm was carried (five years), brandished (seven years), or discharged (ten years).  See id.  The maximum penalty thus derives from caselaw, much of it interpreting the Supreme Court's suggestion in Harris v. United States, 536 U.S. 545 (2002), that "[s]ince [18 U.S.C. § 924(c)(1)(A)'s] subsections alter only the minimum, the judge may impose a sentence well in excess of seven years, whether or not the defendant brandished the firearm." Id. at 554; see also id. at 575-76 (Thomas, J., dissenting) (explicitly referring to the maximum as life imprisonment).  Today, to avoid any uncertainty in this circuit, we join all of our sister circuits in finding that the maximum penalty under 18 U.S.C. § 924(c)(1)(A) is life imprisonment.[6]

The fact that we had not explicitly spoken regarding the maximum penalty at the time of Ortiz's change-of-plea hearing did not, however, excuse the district court of its obligation to inform Ortiz of the maximum at that hearing.  There is no evidence before us, nor does either party contend, that the district court was unsure of the maximum penalty.  The court informed Ortiz at the

---

[6] See United States v. Stewart, 628 F.3d 246, 258 (6th Cir. 2010); United States v. Shabazz, 564 F.3d 280, 289 (3d Cir. 2009); United States v. Johnson, 507 F.3d 793, 798 (2d Cir. 2007); United States v. Gamboa, 439 F.3d 796, 811 (8th Cir. 2006); United States v. Dare, 425 F.3d 634, 642 (9th Cir. 2005); United States v. Avery, 295 F.3d 1158, 1170 (10th Cir. 2002); United States v. Cristobal, 293 F.3d 134, 147 (4th Cir. 2002); United States v. Sandoval, 241 F.3d 549, 551 (7th Cir. 2001); United States v. Pounds, 230 F.3d 1317, 1319 (11th Cir. 2000); United States v. Sias, 227 F.3d 244, 246 (5th Cir. 2000).

-12-

sentencing hearing that the maximum penalty under 18 U.S.C. § 924(c)(1)(A)(iii) was life imprisonment, and the PSR contained that same information. The district court seems to have simply forgotten to inform Ortiz of the maximum at the change-of-plea hearing, as required by Rule 11(b)(1)(H). That error "was both obvious and plain," and the first two prongs of the plain error test are thus met. United States v. Borrero-Acevedo, 533 F.3d 11, 17 (1st Cir. 2008).

The third prong of the plain error test, whether the error affected Ortiz's substantial rights, is a closer question. Ortiz has the burden of demonstrating "a reasonable probability that, but for the error, he would not have entered the plea." United States v. Dominguez Benitez, 542 U.S. 74, 76 (2004). That requires a showing, "informed by the entire record, that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." Id. at 83 (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)).

Ortiz essentially makes two claims as to how the Rule 11 error affected his substantial rights. First, his brief argues that:

> The record reflects that by pleading guilty Ortiz was surrendering an important defense to the carjacking charges since there was evidence that what occurred was a street brawl that had nothing to do with an attempted carjacking which if believed by the jury or established during the course of trial could have led to an acquittal.

-13-

The government counters that Ortiz's co-defendant, Rodríguez, used this very same defense at trial and was found guilty of conspiracy to commit carjacking and of carjacking (though Rodríguez only received a sentence of 180 months). It is not for us, however, to assess whether a defendant would likely have succeeded at trial, had he elected not to plead guilty in the absence of a Rule 11 error. If the defendant can show a reasonable probability that, but for the error, he would not have entered the plea, we must accept that showing without judging its merits. See Dominguez Benitez, 542 U.S. at 85 ("The point of the question is not to second-guess a defendant's actual decision; if it is reasonably probable he would have gone to trial absent the error, it is no matter that the choice may have been foolish."). Ortiz's second claim, in the alternative, is that, if he had been properly informed of the maximum penalty, he might have tried to insist on a Rule 11(c)(1)(C) agreement, which would have allowed him to withdraw his plea and proceed to trial if the district court had rejected the agreement.

The government urges us to find that the error did not affect Ortiz's substantial rights, because Ortiz was notified of the maximum penalty both in the PSR and during the sentencing hearing and did not object or move to withdraw his plea. The government suggests that Ortiz's inaction belies his claim that, but for the Rule 11 error, there is a reasonable probability that

he would not have elected to plead guilty. If the record clearly established that Ortiz had reviewed the PSR with his attorney prior to the sentencing hearing, that might indeed negate Ortiz's claim that the Rule 11 error affected his substantial rights, given Ortiz's failure to object to the PSR. The record before us, however, reveals no such thing, because the district court failed to confirm at Ortiz's sentencing hearing that Ortiz had read and discussed the PSR with his attorney. We are thus met with another complicating factor, which forces us to take one more detour.

Federal Rule of Criminal Procedure 32(i)(1)(A) requires a district court, at sentencing, to "verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." The government concedes that the district court failed to make the proper inquiry under Rule 32(i)(1)(A) but nonetheless argues that there is sufficient evidence that Ortiz read and discussed the PSR with his attorney to satisfy the Rule. The government relies on Ortiz's motion to continue the original sentencing hearing, in which Ortiz's counsel stated that he "came to discuss" the PSR and amended PSR with his client on September 13, 2010 and "need[ed] to thoroughly study the reports and further discuss with [his] client the content of these." These statements alone do not establish that Ortiz actually read or discussed the reports with his attorney. Though we have held in the past that "it is enough that the court

determine that the defendant and counsel have had an opportunity to read and discuss the report," United States v. Cruz, 981 F.2d 613, 620 (1st Cir. 1992), we were interpreting a prior iteration of the Rule, which only required the court to "determine that the defendant and defendant's counsel have had the opportunity to read and discuss the presentence investigation report," id. at 619 n.9 (emphasis added). The Rule, which was amended in 1994, now requires the district court to confirm that "the defendant and the defendant's attorney have read and discussed" the report. Fed. R. Crim. Pro. 32(i)(1)(A) (emphasis added). Without going any further, we find that Rule 32(i)(1)(A)'s mandate was not satisfied here.[7]

Given the record before us, we must therefore assume that Ortiz was notified for the first time at his sentencing hearing that he might receive a life sentence. The fact that Ortiz said nothing when the district court informed him of the maximum penalty at the sentencing hearing does not convince us that Ortiz would have elected to plead guilty regardless of the Rule 11 error.

---

[7] The government relies in part on United States v. Espinola, 242 F. App'x 709 (1st Cir. 2007), vacated on other grounds, 552 U.S. 1240 (2008), an unpublished opinion in which we held that, where "it is clear from the record that [defense] counsel was thoroughly familiar with the PSR, 'we will not assume that defense counsel did not discuss so critically important a document with his client,'" id. at 711 (quoting Cruz, 981 F.2d at 620). Here, it is not "clear from the record" that Ortiz's attorney was "thoroughly familiar with the PSR." Id.

<u>Dominguez Benitez</u> requires Ortiz to demonstrate a reasonable probability, not an absolute certainty, that he would not have entered the plea in the absence of the error.  542 U.S. at 83.

As we did in <u>Rivera-Maldonado</u>, we find here that the error "went to the very purpose of Rule 11, 'which is to advise a defendant of the actual consequences of his plea so that he can realistically decide whether to plead guilty.'"  560 F.3d at 20 (quoting <u>United States</u> v. <u>Santo</u>, 225 F.3d 92, 98 (1st Cir. 2000)). In <u>Rivera-Maldonado</u>, the magistrate judge failed, during the Rule 11 colloquy, to inform the defendant that he could be sentenced to a lifetime of supervised release.  <u>Id.</u> at 18.  Relying on erroneous information in the plea agreement, the court instead told the defendant that the maximum supervised release term was three years. <u>Id.</u>  The defendant stated that "the information he received from the plea agreement and the magistrate judge 'played a crucial role in his decision to plead guilty.'"  <u>Id.</u> at 21.  Given that, as well as the "dramatic difference between a three year period of supervised release and a lifetime of supervised release," we found that the defendant had shown a reasonable probability that, but for the error, he would not have entered the plea.  <u>Id.</u>[8]

---

[8] Similarly, in <u>Santo</u>, we found that a Rule 11 error "reasonably could have affected [the defendant's] decision to change his plea to guilty" where the mandatory minimum was ten years but the defendant was informed in the plea agreement and during the plea colloquy that it was five years.  225 F.3d at 101. We decided <u>Santo</u> before the Supreme Court held in <u>Vonn</u> and <u>Dominguez Benitez</u> that a defendant who fails to preserve a Rule 11

-17-

Of course, in <u>Rivera-Maldonado</u>, the defendant actually received the maximum sentence, a lifetime of supervised release, whereas Ortiz was sentenced below the maximum. Nonetheless, the thirty-year sentence Ortiz received was well above the ten-year minimum that had been mentioned in his plea agreement and during his plea colloquy. The omitted information here, like the erroneous information in <u>Rivera-Maldonado</u>, "dramatically altered the sentencing stakes for the defendant," <u>id.</u>, and Ortiz has established a reasonable probability that he would not have entered into the plea agreement if he had been properly informed of those stakes. Under these particular circumstances, the Rule 11 error affected Ortiz's substantial rights.

Finally, as in <u>Rivera-Maldonado</u>, the Rule 11 error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings" such that we must vacate Ortiz's plea and remand for a new change-of-plea hearing. <u>Id.</u> at 22. One of the core concerns of Rule 11 is that the defendant have "knowledge of the consequences of his plea." <u>United States</u> v. <u>Hernandez-Wilson</u>,

---

claim must meet the plain error standard, which requires the defendant to establish a reasonable probability that, but for the error, he would not have pled guilty. <u>See</u> <u>Vonn</u>, 535 U.S. 55; <u>Dominguez Benitez</u>, 542 U.S. 74. Nonetheless, "we recognized in <u>Santo</u> that the defendant faced a 'high hurdle' because he had failed to seek withdrawal of his guilty plea in the lower court. We found the defendant had cleared that high hurdle and had shown a 'substantial defect in the Rule 11 proceeding itself.'" <u>Rivera-Maldonado</u>, 560 F.3d at 20 (quoting <u>Santo</u>, 225 F.3d at 97) (internal citation omitted).

-18-

186 F.3d 1, 6 (1st Cir. 1999). The failure to insist on the requirements of Rule 11 may well deter future defendants from entering into guilty pleas and waivers of appeal, which conserve judicial resources and promote "efficiency and finality in the adjudication of criminal cases." Teeter, 257 F.3d at 22.

Because we find that the Rule 11 violation constituted plain error, we need not address whether the Rule 32 violation, which Ortiz also raises for the first time on appeal, meets the same fate.

### III. Conclusion

While plain error is a "high hurdle," United States v. Henderson, 320 F.3d 92, 105 (1st Cir. 2003), some defendants do clear it, and Ortiz has. On remand, Ortiz may of course receive a sentence far longer than 360 months. Indeed, that risk is very real, given the underlying conduct at issue here. But Ortiz made the decision to proceed with this appeal with full knowledge of its potential consequences.[9] The same cannot be said of his original decision to plead guilty.

Vacated and remanded.

---

[9] At our request, Ortiz's attorney has filed a certified statement confirming that he discussed with his client the possibility that, if we were to grant his appeal and remand for a new change-of-plea hearing, he could receive up to a life sentence on remand. Notwithstanding that risk, Ortiz's attorney has represented to us that Ortiz wishes to proceed with his appeal.