# United States Court of Appeals
## For the First Circuit

No. 14-1219

UNITED STATES OF AMERICA,

Appellee,

v.

JOSE ALIBAL SANTIAGO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Lynch, Chief Judge,
Howard and Barron, Circuit Judges.

Victoria M. Bonilla-Argudo, with whom Bourbeau & Bonilla, LLP was on brief, for appellant.
Donald C. Lockhart, Assistant U.S. Attorney, with whom Peter F. Neronha, United States Attorney, was on brief, for appellee.

December 24, 2014

**LYNCH, Chief Judge**.  This case involves the guilty plea of a coconspirator, Jose Alibal Santiago, in a 2010 murder in Rhode Island.  This court earlier issued an en banc decision about the state's obligation to honor a federal detainer in this same murder for his codefendant, Jason Pleau.  See United States v. Pleau, 680 F.3d 1 (1st Cir. 2012) (en banc).

On September 5, 2013, Jose Alibal Santiago pleaded guilty to conspiracy to commit robbery affecting commerce; robbery affecting commerce; and possessing, using, carrying, and discharging a gun in relation to a crime of violence with death resulting.  See 18 U.S.C. §§ 924, 1951(a).  The government concedes that the district court erred at the change-of-plea hearing by omitting sufficient notice of the possible sentence accompanying the third charge, which involved both a consecutive sentence and a ten-year mandatory minimum.  Counsel for the government also failed to provide such notice in his description of the case at that hearing.  On plain error review, we find that Santiago's substantial rights were not affected by this error and affirm.

I.

On September 20, 2010, Santiago and a coconspirator, Kelley Lajoie, drove from Springfield, Massachusetts to Woonsocket, Rhode Island to accomplish a planned-out crime.  There, they met their coconspirator, Jason Pleau.  The three planned to rob a gas

station manager, David Main, of the Woonsocket Shell Station's receipts as he went to deposit them at a nearby Citizens Bank.

Santiago, Pleau, and Lajoie first went to the Shell Station.  There, Santiago spoke with the cashier, who was an acquaintance.  The three saw Main and identified a car they believed belonged to him.  They then split up into assigned tasks: Santiago drove his truck to an apartment complex near the Citizens Bank, Pleau waited with his gun near the bank, and Lajoie observed the gas station.

Just after 11:00 a.m., two and a half hours later, Lajoie called Pleau and told him that she saw Main leaving the gas station.  Main traveled to the bank, just down the road, with the receipts.  At the outside of the bank, he encountered an armed and masked Pleau, who demanded the money.  Main did not comply but ran toward the bank doors.  Pleau followed him, shooting repeatedly. Main was struck in the head and collapsed at the entrance to the bank.  Pleau took the money ($12,542) and ran to Santiago, who drove them away in his waiting car.  Two witnesses identified Santiago as driving the truck.

The two drove to Pleau's house in Providence, where they met Lajoie and Pleau's girlfriend and divided the money.  Santiago and Lajoie made their way back to Springfield.  Santiago, after attempting to evade capture for two days, surrendered himself on September 22 to the Woonsocket police.

On December 14, the grand jury indicted Santiago, Pleau, and Lajoie for (1) conspiracy to commit robbery affecting commerce (in violation of the Hobbs Act), 18 U.S.C. § 1951(a); (2) committing robbery affecting commerce (in violation of the Hobbs Act), id.; and (3) possessing, using, carrying, and discharging a gun in relation to a crime of violence with death resulting, id. § 924(c)(1)(A), (j)(1).[1] The first two counts of the indictment each have no mandatory minimum and a twenty-year statutory maximum. Id. § 1951(a). The third count carried a possible death sentence and required a mandatory minimum of ten years, to be served consecutively to any other sentence. Id. § 924(c)(1)(A)(iii), (D)(ii), (j)(1). The government gave notice that it would not seek the death penalty as to Santiago.

On December 9, 2011, Lajoie pleaded guilty to the three charges and agreed to cooperate. She was sentenced to 188 months. On July 31, 2013, Pleau pleaded guilty to the three charges. Pleau was sentenced to life in prison without the possibility of parole.

On September 4, 2013, the district court began voir dire for Santiago's trial. The next day, Santiago changed his plea to guilty, without a plea agreement. On February 13, 2014, the district court sentenced him to forty years: twenty for the first

---

[1] The indictment also included accomplice liability, 18 U.S.C. § 2, for the second and third charges.

-4-

two counts, served concurrently, and twenty for the third count, served consecutively.  This appeal followed.

## II.

Santiago seeks to vacate his plea on the grounds that, at the change-of-plea hearing, he was informed of the statutory maxima for the three charges, but was not informed of the mandatory minimum for Count Three nor the requirement that the Count Three sentence be served consecutively.  This omission, he argues, is a violation of Fed. R. Crim. P. 11(b)(1)(I), and the government agrees.  See id. ("[T]he court must inform the defendant of, and determine that the defendant understands . . . any mandatory minimum penalty . . . ."); United States v. Rivera-Maldonado, 560 F.3d 16, 19 (1st Cir. 2009) ("Change of plea colloquies are governed by Federal Rule of Criminal Procedure 11 . . . .").

As Santiago failed to object at the hearing or to move to set aside his plea in the district court, we review for plain error.  See Rivera-Maldonado, 560 F.3d at 19.  To satisfy plain error review, the defendant must show "1) there was an error, 2) the error was plain, 3) the error affected substantial rights, and 4) the error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." Id. (alteration in original) (quoting United States v. Vonn, 535 U.S. 55, 62-63 (2002)) (internal quotation marks omitted).  The government concedes that

a Rule 11 error occurred and that it was plain. The next issue is whether it affected Santiago's substantial rights.

To satisfy the third prong, Santiago "must show a reasonable probability that, but for the error, he would not have entered the plea." United States v. Domínguez Benítez, 542 U.S. 74, 83 (2004). We must be satisfied, after review of the entire record, "that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." Id. (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984); United States v. Ortiz-García, 665 F.3d 279, 286 (1st Cir. 2011).

Santiago's arguments on this prong have no merit. The record shows what Santiago knew before, during, and after the Rule 11 hearing. Considered cumulatively, the record clearly shows that Santiago was aware at the time of that hearing of the mandatory ten-year minimum for Count Three and that it was consecutive. We see scant probability that he would not have entered his plea had he been informed of those facts at the Rule 11 hearing.

Before the Rule 11 Hearing

On May 8, 2012, before the Rule 11 hearing, Santiago wrote a letter explaining, "I'm facing a life sentence if I am found guilty at trial, and 40 years if I plead guilty." Santiago accurately predicted his sentence upon pleading guilty. It is likely he predicted serving some time consecutively for Count

Three, in light of the twenty-year statutory maximum for Counts One and Two.[2]

The defendant emphasizes Santiago's <u>pro se</u> filing on August 13, 2013, only weeks before trial.  There, in the course of raising concerns about his attorney, Santiago's filing stated that "[i]f convicted, I am facing a sentence between 30-40 years in prison."  Santiago argues that, since he thought he faced thirty to forty years if convicted at trial, he presumably assumed that he would receive a lower sentence upon pleading guilty.  That is one possible inference; another is that he thought he would receive a sentence toward the lower bound of that range following a guilty plea.  And even taking Santiago's inference as true, he may well have thought that his guilty plea would lead to a sentence below thirty years by adding short sentences on Counts One and Two (which have no mandatory minimum) to a ten-year consecutive sentence on Count Three.  His reliance on this filing adds little to our analysis.

<u>During the Rule 11 Hearing</u>

Though the error occurred at the Rule 11 hearing, the judge did ask Santiago whether he had spoken with his lawyer "about the Federal Sentencing Guidelines and how they are likely to apply

---

[2] Santiago challenges the authenticity of the letter, which is signed "Ho-Ho" and was filed by Pleau.  In denying Pleau's motion to sever, the district court accepted Pleau's submission that Santiago was the author of that letter.

in this case," to which Santiago answered, "Yes." The likely application of the Guidelines would assuredly have included the consecutive ten-year mandatory minimum for Count Three. The district court also warned Santiago that the Presentence Investigation Report (PSR) "is a very important document . . . in determining what the appropriate sentence is," a comment which Santiago indicated that he understood.

After the Rule 11 Hearing

On December 5, 2013, the Probation Office released an initial PSR, which explicitly referenced Count Three's ten-year mandatory minimum and required sequential sentencing. On February 6, 2014, Santiago filed several objections to the initial PSR, including to its use of uncharged conduct, but no objection to the ten-year mandatory minimum, the consecutive sentence requirement, or the Guidelines sentencing range. The same day, the Probation Office released a final PSR, again explicitly referencing the ten-year consecutive mandatory minimum.

The Sentencing Hearing

At sentencing on February 13, the court asked the defense lawyer whether he "had the opportunity to review the [PSR] with [his] client and [had] been able to answer all of [the client's] questions." The defense counsel replied in the affirmative. At no point during the sentencing hearing did Santiago express surprise

at the application of the Guidelines, the consecutive sentences, or his ultimate sentence.

Santiago relies on United States v. Ortiz-García, which held that the district court there had committed Rule 11 error by failing to inform the defendant of the maximum sentence -- a life sentence -- for the charge to which he pleaded guilty. 665 F.3d at 285-86. On plain error review, we found that the error affected substantial rights even though the PSR contained the correct maximum penalty. Id. at 288. We reasoned that "[i]f the record clearly established [a defendant] had reviewed the PSR with his attorney prior to the sentencing hearing" and failed to object, "that might indeed negate" the defendant's claim of Rule 11 error. Id. at 287. The record there "reveal[ed] no such thing, because the district court failed to confirm . . . that [the defendant] had read and discussed the PSR with his attorney." Id. Indeed, given the record before this court, it assumed the first time the defendant ever learned he might receive a life sentence was at his sentencing hearing. Id. Based on that assumption, this court in Ortiz-García declined to draw an inference that the defendant knew. Id. at 287-88. In this case, unlike in Ortiz-García, the record reveals that the district court confirmed that the defendant had, at the least, reviewed the PSR with his attorney and disproves his contention that he was caught by surprise.

Santiago says for the first time in his reply brief in this appeal that the district court also erred because it must confirm that the defendant "read and discussed the [PSR]" with his attorney under the language of Fed. R. Crim. P. 32(i)(1)(A) (emphasis added). See Ortiz-García, 665 F.3d at 287. Santiago reads that language to impose two distinct requirements: (1) the court must confirm that the defendant personally read the PSR, and (2) the court must confirm that the defendant discussed it with his attorney.

Fed. R. Crim. P. 32(i)(1)(A) does require that "[a]t sentencing, the court . . . must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report." This is a change from the 1994 version of the rule, which required only that the court "determine that the defendant and the defendant's counsel have had the opportunity to read and discuss" the PSR. Ortiz-García, 665 F.3d at 287 (quoting United States v. Cruz, 981 F.2d 613, 619 n.9 (1st Cir. 1992)) (internal quotation marks omitted).

Nonetheless, to the extent that Santiago newly argues for reversal on the basis of a Rule 32 error, the argument is waived. United States v. Martí-Lón, 524 F.3d 295, 299 n.2 (1st Cir. 2008) ("Issues 'advanced for the first time in an appellant's reply brief are deemed to have been waived.'" (quoting United States v. Eirby, 515 F.3d 31, 36 n.4 (1st Cir. 2008))). Insofar as this argument

-10-

arises within the Rule 11 analysis, we note that Santiago did not object to the district court's use of the term "reviewed" and does not say that the attorney actually failed to review the PSR with him. This argument adds nothing to his argument that there is a reasonable probability that but for the error, he would not have entered the plea.

As this court has said,

> There is no doubt "that it is the better practice for trial courts to address the defendant directly in order to establish that he or she has had the opportunity to read the [PSR] and to discuss it with his/her counsel. This simple practice will avoid unnecessary challenges and help ensure fairness in the sentencing procedure."

United States v. DeLeon, 704 F.3d 189, 196 (1st Cir. 2013) (alteration in original) (quoting United States v. Manrique, 959 F.2d 1155, 1157-58 (1st Cir. 1992)); see id. at 196 & n.7 (explaining on plain error review that failure to follow that practice is not per se Rule 32 error, even under the current language of the Rule).

The other cases Santiago cites are distinguishable, as they involved affirmative misrepresentations by the government (in the written plea agreement) and by the district court (at the change-of-plea hearing) to the defendant. See Rivera-Maldonado, 560 F.3d at 17-19, 21 (defendant assured by government and court before pleading guilty of three-year maximum supervised release, but PSR stated lifetime maximum supervised release); United States

-11-

v. <u>Santo</u>, 225 F.3d 92, 93-96 (1st Cir. 2000) (defendant assured by government and court before pleading guilty of five-year mandatory minimum, but PSR applied ten-year mandatory minimum).

Finally, Santiago does not say that he was <u>actually</u> unaware of the consecutive mandatory minimum. Indeed, after the district court explicitly mentioned the ten-year consecutive mandatory minimum for Count Three at the sentencing hearing, Santiago personally addressed the district court without indicating any concern about that information.

Since it is quite clear that Santiago was aware of the information, it defies logic to say that he would not have pleaded guilty had the information been given explicitly.

III.

On these facts, Santiago has not shown a reasonable probability that, had he been informed at the Rule 11 hearing of the mandatory minimum on Count Three, he would not have entered the guilty plea. <u>See</u> <u>Dominguez Benitez</u>, 542 U.S. at 83. The conviction and sentence are <u>affirmed</u>.

<u>So ordered.</u>