# United States Court of Appeals
## For the First Circuit

No. 13-2205

UNITED STATES,

Appellee,

v.

ANGEL ENRIQUE ROMERO-GALINDEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Lynch, Chief Judge,
Howard and Thompson, Circuit Judges.

Kendys Pimentel Soto on brief for appellant.
Rosa Emilia Rodríquez-Vélez, United States Attorney, and
Nelson Pérez-Sosa, Assistant United States Attorney, Chief,
Appellate Division, on brief for appellee.

April 3, 2015

**THOMPSON, Circuit Judge**. Following a guilty plea on a weapons charge, Angel Romero-Galindez, who many years earlier had four times over been convicted of murder, was sentenced as an armed career criminal to twenty years imprisonment. Claiming an assortment of errors permeated the proceedings below, Romero-Galindez appeals, asking this court to vacate his guilty plea and sentence. Having carefully considered the matter, we affirm.

## BACKGROUND

Since 1997, Romero-Galindez, who was convicted of committing four murders between the ages of sixteen and seventeen, had been serving time in the Puerto Rico state correctional system.[1] In 2012, the then thirty-one year old, had been granted parole and was staying at some type of rehabilitation center. According to Romero-Galindez, he received a call at the center from his sister, who expressed concern for her life following a gang shoot-out at the housing project where Romero-Galindez had grown up. Worried, Romero-Galindez left the center to speak with the involved gang members and, once the issue was resolved, reportedly contacted his probation officer to turn himself in.

On March 27, 2012, Puerto Rico police officers, having learned that Romero-Galindez, a state fugitive because of his

---

[1] Since this appeal follows a guilty plea, we gather the facts from "the change-of-plea colloquy, the presentence investigation report, and the transcript of the disposition hearing." United States v. Jiminez, 498 F.3d 82, 84 (1st Cir. 2007).

departure from the rehabilitation facility, was residing at the public housing project, went there and arrested him. Romero-Galindez consented to a search of the apartment, which resulted in the seizure of an AK-47 assault rifle and ammunition. He admitted the rifle was his.

Federal authorities stepped in and Romero-Galindez was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). Following plea negotiations, Romero-Galindez, who was represented by counsel throughout all court proceedings, waived his right to a trial by jury and sought to plead guilty. The plea agreement indicated that the minimum term of imprisonment required by statute was "no less than fifteen years (15) and no more than life in prison." It also reflected the parties' agreement that should Romero-Galindez not be found an armed career criminal, the government would recommend he be sentenced at the higher end of that range, while the defense would advocate for the lower end. The parties stipulated, however, that should Romero-Galindez turn out to be an armed career criminal, the parties would recommend a fifteen-year sentence.

The change of plea hearing took place on January 18, 2013 before a magistrate judge. Upon questioning, Romero-Galindez informed the judge that the plea agreement had been explained to him and that he understood what it said. The government reiterated

that, in the event Romero-Galindez was found to be an armed career criminal (which defense counsel conceded was a near guarantee), the parties were suggesting the fifteen-year mandatory minimum sentence. The judge went on to explain the penalty faced by Romero-Galindez. She indicated that the § 922(g)(1) charge carried a maximum penalty of ten years imprisonment and three years supervised release but, if Romero-Galindez was found to have violated the Armed Career Criminal Act, "then you're considered a career criminal, and then the statutory maximum does not apply." After some more back and forth, Romero-Galindez pled guilty and the judge found him qualified to do so.

The magistrate judge issued a report and recommendation. In it, she indicated that Romero-Galindez expressed his understanding of the maximum penalties, which the report stated was not less than fifteen years imprisonment or more than life, with a term of supervised release of not more than five years. The report recommended the guilty plea be accepted, which the district court judge then did.

The presentence investigation report (PSR) issued. Romero-Galindez's base offense level was put at 26 but the enhancement for his armed career criminal status brought him up to 33. With three points taken off for acceptance of responsibility, the total offense level ended up at 30. The PSR noted the statutory minimum penalty was fifteen years and the maximum was

life.  The guideline range, given the total offense level of 30 and criminal history category of VI, was 180 to 210 months imprisonment (fifteen to seventeen and a half years).  The report also noted that the statutory term of release was not more than five years, and the guideline range for supervised release was two to five years.

Romero-Galindez's sentencing hearing took place over three days, the important date for our purposes being August 19, 2013, when his sentence was handed down.[2]  Though the government stood by its fifteen-year sentence recommendation, the district judge was unconvinced.  Emphasizing Romero-Galindez's four prior murder convictions and the fact that an AK-47 is an offensive weapon, the judge indicated the statutory minimum would not be a sufficient deterrent.  Though the judge went through the Guidelines calculation delineated in the PSR, he was clear that "the court is going to provide a statutory sentence, not a guideline sentence." He then sentenced Romero-Galindez to 240 months (twenty years) in prison, with five years of supervised release to follow.

Romero-Galindez timely appealed, challenging both the validity of his plea and the reasonableness of his sentence.

---

[2] On the first hearing day, July 19, 2013, the court heard from two defense witnesses advocating for leniency, and on the second day, July 23, 2013, arguments were heard on whether Romero-Galindez was arrested or voluntarily surrendered.

**VALIDITY OF PLEA**

Romero-Galindez says his plea was not knowing and voluntary because the judge failed to inform him of the statutory minimum (fifteen years) and maximum (life) at the change of plea hearing, and got the maximum term of supervised release wrong, calling it three years instead of five. The government, for unknown reasons, only addresses the second half of this argument. While it does not dispute that the term of supervised release was stated incorrectly, it claims it does not matter because it is clear from the record that Romero-Galindez was aware of the correct term and the difference between the stated and actual term of years is not so great.

Since Romero-Galindez did not object or seek to set aside his plea below, review is for plain error only. United States v. Santiago, 775 F.3d 104, 106 (1st Cir. 2014). The rubric is familiar; there must be (1) an error, (2) that was plain, (3) which affected substantial rights, and (4) seriously impacted "the fairness, integrity or public reputation of judicial proceedings." Id.

The error here is plain. Rule 11 of the Federal Rules of Criminal Procedure provides that at the change of plea hearing "the court must inform the defendant of, and determine that the defendant understands . . . any maximum possible penalty, including imprisonment, fine, and term of supervised release." Fed. R. Crim.

P. 11(b)(1)(H). The court must do the same for "any mandatory minimum penalty." Fed. R. Crim. P. 11(b)(1)(I). None of this was done here. While the magistrate judge explained that the § 922(g)(1) maximum penalty of ten years imprisonment would not apply if Romero-Galindez was found to be an armed career criminal (as he had been charged), she never went on to say what the mandatory minimum and maximum penalty would be in that event. And, as the government concedes, the judge also misstated the maximum term of supervised release as being three years rather than five.

Nonetheless, even though the judge clearly erred, Romero-Galindez's claim falters under the plain error requirement that his substantial rights be affected, which requires that Romero-Galindez "show a reasonable probability that, but for the error, he would not have entered the plea." United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004); see also Santiago, 775 F.3d at 107. This he cannot do.

In support of his claim of error, Romero-Galindez relies on United States v. Rivera-Maldonado, 560 F.3d 16 (1st Cir. 2009) and United States v. Santo, 225 F.3d 92 (1st Cir. 2000).

In Rivera-Maldonado, the defendant was erroneously informed in both the plea agreement and the change of plea colloquy that he faced, at most, three years of supervised release, when in fact the maximum was life. 560 F.3d at 17-18. The correct term of supervised release was contained in the later-issued PSR, and

relied upon at sentencing by the judge who sentenced the defendant to supervised release for life.  Id. at 19.  As in this case, all were in agreement that the error was plain.  Id.  Emphasizing the "dramatically altered . . . sentencing stakes for the defendant," this court went on to find a reasonable probability that the defendant would not have entered the plea had he understood his exposure. Id. at 21.

Similarly, in Santo, we found that the defendant having been informed in the plea agreement, and at the change of plea hearing, that the mandatory minimum was five years imprisonment instead of the correct ten years (which he was ultimately sentenced to) was an error that reasonably could have affected his decision to change his plea to guilty.[3]  225 F.3d at 101.  As in Rivera-Maldonado, the correct information was provided to the defendant in the PSR and at sentencing.  Santo, 225 F.3d at 96.

There are some important differences between the above cases and the one at hand.  We start with Romero-Galindez's minimum and maximum term of imprisonment.

---

[3] Santo was decided before the Supreme Court held in United States v. Vonn, 535 U.S. 55, 58 (2002) and United States v. Dominguez Benitez, 542 U.S. 74, 76 (2004) that plain error was the apropos standard in unpreserved Rule 11 claims.  United States v. Ortiz-García, 665 F.3d 279, 288 n.8 (1st Cir. 2011).  In effect though, the review employed in Santo was similar. In it, we noted the high hurdle faced by the defendant, questioned whether there was a substantial defect in the proceedings, and considered the impact on the defendant's substantial rights.  Santo, 225 F.3d at 97.

Significantly, unlike in Rivera-Maldonado and Santo, the mandatory minimum and maximum term of imprisonment was stated correctly in the plea agreement, a document that Romero-Galindez acknowledged at the plea hearing that he understood. At the plea hearing, the magistrate judge never contradicted the information contained in the plea agreement, rather she neglected to mention it. Further, at the hearing, the government attorney twice accurately stated that the statutory minimum was fifteen years (though did not reference the mandatory maximum of life) while explaining the parties' agreement to recommend the minimum sentence. That makes this case more akin to United States v. Sevilla-Oyola, 770 F.3d 1, 4-5 (1st Cir. 2014), in which the judge failed to advise the defendant of a certain maximum penalty at the plea hearing. Though we ultimately found the issue waived on appeal, we concluded the defendant could not establish plain error -- specifically, a reasonable probability that he would not have plead guilty -- because the omitted maximum penalty was correctly contained in the PSR, which the defendant confirmed he understood during the plea colloquy. Id. at 14 n.24.

As far as post-plea, the minimum and maximum terms of imprisonment were correctly stated in the magistrate judge's report and recommendation regarding plea acceptance. The same goes for the PSR. Three versions of the PSR issued before sentencing, each of which accurately stated the statutory minimum and maximum term

of imprisonment. At the sentencing hearing, when the judge explained what penalties Romero-Galindez faced, the information provided was accurate as well.

No more is needed. All indications are that Romero-Galindez was made aware of the mandatory minimum and maximum imprisonment term during plea negotiations, as evidenced by the plea agreement. That range was then correctly reiterated in the report and recommendation, in three PSRs, and at sentencing. Romero-Galindez never expressed surprise or hesitation at any of these junctures.[4] Given all this, Romero-Galindez cannot demonstrate a reasonable probability that he would not have entered the plea but for the statutory sentence range being omitted from the plea hearing. See Dominguez Benitez, 542 U.S. at 83.

Misinforming the defendant of the applicable term of supervised release also gives no ground for setting aside the plea in this case. The relevant term of supervised release was not referenced in the plea agreement and, as the government concedes, was incorrectly stated at the change of plea hearing as being three, as opposed to five, years. However, like the statutory

---

[4] Notably, it is not as if Romero-Galindez's attorney was not contemplating probation's PSR calculations. Rather, in between the original PSR and version two issuing, Romero-Galindez's attorney filed a "Motion for Exam" seeking to inspect the seized AK-47. He noted that probation had classified the weapon as a machine gun, a designation he disputed. An examination of the weapon was sought because the "result of said examination could affect the guideline calculations already submitted in the present case."

minimum and maximum imprisonment term, the applicable term of release was accurately stated in the magistrate judge's report and recommendation, in the three versions of the PSR, and at the sentencing hearing by the judge while he explained the penalties on the table. Again, Romero-Galindez did not balk at any of those points in time.

United States v. Ortiz-García 665 F.3d 279 (1st Cir. 2011) is instructive. In that case, both the plea agreement and the judge at the change of plea hearing failed to explain the maximum penalty faced by the defendant; however, the information was accurately stated in the PSR and by the judge at sentencing, and the defendant lodged no objection. Id. at 285, 287. Based on the defendant's failure to object, the government urged this court to find no Rule 11 violation, but we were unmoved. Id. at 286. The record revealed that the judge had not confirmed at sentencing that the defendant had read and discussed the PSR with his attorney (as required by Federal Rule of Criminal Procedure 32(i)(1)(A)). Id. at 287. We explained that had the record shown that the defendant had reviewed the PSR prior to sentencing, "that might indeed negate Ortiz's claim that the Rule 11 error affected his substantial rights, given Ortiz's failure to object to the PSR." Id.; see also Santiago, 775 F.3d at 108 (finding that the district court's confirming that the defendant had reviewed the PSR with his attorney disproved his contention that he was caught by surprise).

-11-

Here, Romero-Galindez makes no allegation that he did not read and discuss the thrice-issued PSR prior to sentencing, nor does anything in the record compel that conclusion.[5]  On top of this, the erroneous information regarding the pertinent term of supervised release did not "dramatically alter[] the sentencing stakes for the defendant," a factor we were concerned with in Rivera-Maldonado.  560 F.3d at 21; see id. (emphasizing "the dramatic difference between a three year period of supervised release and a lifetime of supervised release").  Though we by no means minimize the restraining nature of supervised release, the two year difference between three and five years of supervised release is but a small fraction of the life-imprisonment penalty that Romero-Galindez was facing.  See, e.g., United States v. Munoz, 68 F.3d 465, 1995 WL 581435, *1 (5th Cir. 1995) (per curiam) (unpublished) ("The court's understatement of the supervised release term by two years was a relatively small fraction of the maximum term of imprisonment (life) that [the defendants] faced.").  And the transcript of the sentencing hearing makes clear that the primary concern for Romero-Galindez (and the court) was the length of time that he would be imprisoned, specifically how old he would

---

[5] The record includes the transcript for the final day of Romero-Galindez's sentencing, August 19, 2013, during which the judge did not ask whether Romero-Galindez reviewed the PSR.  This does not mean the judge never did; there are no transcripts provided for the first two days of the sentencing hearing, July 19 and 23.

-12-

be when he got out.  Defense counsel's expressed fear was that a fifteen-year sentence, given Romero-Galindez's age, would effectively turn into a life sentence.  There was no debate about, or worry voiced over, what term of supervised release he would face.

These things combined compel us to conclude that Romero-Galindez has failed to satisfy his burden to show that in light of the mis-stated term of supervised release, "the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding."  Dominguez Benitez, 542 U.S. at 83 (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)).

The guilty plea stands.

### REASONABLENESS OF SENTENCE

The second half of Romero-Galindez's appeal takes aim at his sentence.  He disputes its procedural and substantive reasonableness, offering the following.  First, Romero-Galindez says his criminal history category set forth in the PSR, and cited at the sentencing hearing by the court, was miscalculated.  Second, he claims the court impermissibly disregarded the Sentencing Guidelines as a starting point.  And finally, according to Romero-Galindez, the judge relied on improper sentencing factors, (e.g., public opinion and the supposed lenient treatment Romero-Galindez received in state court), while putting too much weight on his prior convictions.

The government's counter is again less than complete, hitting just some of Romero-Galindez's claimed errors. In short, the government argues that overall the Guidelines calculation was sound and the court considered proper factors, like deterrence and the serious nature of the offense, when it came up with an eminently reasonable twenty year sentence.

Our review is for abuse of discretion, which means "discerning whether the challenged sentence is procedurally sound and substantively reasonable." United States v. Gallardo-Ortiz, 666 F.3d 808, 811 (1st Cir. 2012); see also Gall v. United States, 552 U.S. 38, 51 (2007). We look for procedural blunders, like improper Guidelines calculations or an insufficient explanation from the judge, as well as whether the sentence imposed is in fact substantively reasonable. United States v. Politano, 522 F.3d 69, 72 (1st Cir. 2008). "[T]he linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result." United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008).

With these specifications in mind, we take Romero-Galindez's arguments in turn.

### i. Criminal History Calculation

Romero-Galindez, though he agrees that his adjusted offense level was correctly calculated, claims that his criminal history score was mistakenly tallied at 14, resulting in a criminal history of VI, when it should have been 9, which would mean a

criminal history category of IV. We need not delve too deeply into the particulars of the argument; it suffices to note that Romero-Galindez thinks probation, in deciding what Guidelines provisions were applicable, did not properly take into account that he was under eighteen years old when he committed his prior crimes.[6] Whether this argument has merit is not something we need to get into because even assuming it does, Romero-Galindez cannot prevail.

"If we find an alleged Guideline error would not have affected the district court's sentence, we may affirm." United States v. Marsh, 561 F.3d 81, 86 (1st Cir. 2009). In other words, we think the alleged error harmless. United States v. McGhee, 651 F.3d 153, 158 (1st Cir. 2011) (citing Williams v. United States, 503 U.S. 193, 203 (1992)) ("'[O]nce the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court's selection of the sentence imposed.'"). The record, though, must make the innocuous nature of the error unmistakable. See United States v. Ortiz, 741 F.3d 288, 294 (1st Cir. 2014); McGhee, 651 F.3d at 159.

---

[6] The relevant provisions are U.S.S.G. § 4A1.1 and § 4A1.2, which "are concerned with counting and weighing sentences of imprisonment to establish a defendant's criminal history category," with one of the variables being whether the earlier offense was committed prior to age eighteen and whether the defendant was convicted as an adult. United States v. McGhee, 651 F.3d 153, 155-56 (1st Cir. 2011).

-15-

It does just that here.  As we said above, the judge was explicit that he was not going to sentence Romero-Galindez according to the Guidelines.  The judge made this point pellucid while delving into Romero-Galindez's criminal history.  He noted that the applicable criminal history category was VI and that Romero-Galindez had in excess of thirteen criminal history points. [App 100] The following exchange then took place:

> THE COURT: He has in excess of 13; is that correct? It doesn't really make any difference because the Court is going to provide a statutory sentence, not a guideline sentence.
>
> THE PROBATION OFFICER: 14 points.
>
> THE COURT: 14.  So he gets off.  He's off the page.  All right.  But that's not important.

The sentencing judge made it apparent that Romero-Galindez's criminal history category did not affect the ultimate sentence imposed.  Furthermore, the judge was firm in his thinking that the Guidelines yielded too lenient of a sentence (more on this below).  We think it safe to assume that if the judge thought the punishment too permissive at a criminal history category of VI, he would not have gone for the even more permissive sentence imposed by the supposedly correct category of IV.  Indeed, the record suggests the judge might not have found the category of IV to accurately reflect Romero-Galindez's criminal history.

As such, assuming for the sake of argument that there was some error in his criminal history calculation, the record reveals

-16-

that it did not alter the district court's sentence selection. See, e.g., United States v. Tavares, 705 F.3d 4, 27-28 (1st Cir. 2013) (finding the district court's failure to choose between the conflicting criminal history categories proffered by the government and the defense was harmless error as the court made clear that the Guidelines sentencing range was irrelevant to the sentence it was going to hand down).

### ii. Attention to the Guidelines

Citing the above dialogue where the sentencing judge indicated that Romero-Galindez's criminal history points "d[id]n't make a difference" and were "not important," Romero-Galindez claims that the judge improperly disregarded the Sentencing Guidelines as a jumping-off point.

Our case law instructs that the Guidelines "are simply 'the starting point and . . . initial benchmark' for crafting a sentence." United States v. King, 741 F.3d 305, 308 (1st Cir. 2014) (quoting Gall, 552 U.S. at 49). While "a sentencing court must 'give respectful consideration to the Guidelines, Booker permits the court to tailor the sentence in light of other statutory concerns as well.'" Pepper v. United States, 131 S.Ct. 1229, 1241 (2011) (quoting Kimbrough v. United States, 552 U.S. 85, 101 (2007)).

Here, the judge unambiguously indicated that he was not going with a Guidelines sentence for a variety of reasons (more

fully discussed below). This is not the same as disregarding the Guidelines as a starting point. At the sentencing hearing, the judge distinctly went through the Guidelines computation, detailing Romero-Galindez's base offense level, criminal history, status as an armed career criminal, acceptance of responsibility, total offense level, and guideline sentence range. The judge indicated that he had reviewed the PSR and its Guidelines computations, as well as the sentencing factors set forth in 18 U.S.C. § 3553. Far from indicating inadequate attention to the Guidelines, the record shows that the court considered the option presented by the Guidelines (even if they may have been calculated incorrectly) and then, for clearly enumerated reasons, rejected it as producing an overly lenient sentence. This was an option well within its prerogative to take.

### iii. Sentencing Factors

Finally, Romero-Galindez criticizes the factors considered by the sentencing judge in fashioning the twenty year sentence, alleging that too much weight was placed on his previous crimes and their corresponding sentence, as well as public perception.[7] We are unpersuaded.

---

[7] Romero-Galindez, without elaboration, faults the district court for not detailing the § 3553(a) factors. Even assuming the argument developed enough to preserve, Romero-Galindez does not prevail. An exhaustive sorting through the factors one by one is not the approach demanded by our case law. United States v. Aponte-Vellón, 754 F.3d 89, 94 (1st Cir. 2014).

A sentencing court's deviation from the Guidelines "should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender." Martin, 520 F.3d at 91; 18 U.S.C. § 3553(a)(1). The record reveals that Romero-Galindez's sentence was grounded in both.

For one, the court honed in on the grave nature of the offense Romero-Galindez had committed. The court reflected that "this is a serious case because it is an AK-47, which is an offensive weapon with a magazine of over 30 and 11 bullets within the magazine." The court also focused on the serious nature of the crimes of Romero-Galindez's youth. The court noted that, in eighteen years, "I have never had a defendant come into my courtroom with four murders."

While Romero-Galindez faults the court for highlighting these crimes, claiming that the judge only emphasized the number of previous convictions as opposed to the circumstances surrounding them, the record belies his contention.[8] The judge was clearly

_____

[8] Romero-Galindez very briefly alludes that the court's focus on his previous crimes constituted impermissible double counting since his base offense level was increased because of the prior crimes. The double counting rubric seems a poor fit. He is not alleging, for instance, that the same underlying facts were applied via two separate Guideline provisions to set a base level and then enhance a sentence. Rather Romero-Galindez's crimes were factored into his base level (U.S.S.G. § 2K2.1(a)(1)) and then their particular gravity considered by the court as a factor in determining how stringent his non-Guideline sentence should be. In any event, aside from stating that there has been impermissible double counting and offering one unhelpful out of circuit case, Romero-Galindez goes no further. Such perfunctory treatment waives

concerned with the serious nature of the earlier crimes, not just that they numbered four. He underscored that the earlier misdeeds were for first and second degree murder, including a carjacking, and that all involved weapons. The fact that the current crime and the previous ones all involved weapons demonstrated, for the judge, the defendant's "proclivity towards weapons." Furthermore, the court did not forget that the murders were committed over a dozen years ago in Romero-Galindez's youth, rather it emphasized that fact multiple times.

Romero-Galindez also avers that the court tried to compensate for a perceived overly lenient state court sentence for the four murders. We disagree. To start, as a general proposition, there is nothing wrong with the court factoring a generous prior sentence into the equation. As we have explained, "a sentencing court may . . . consider whether, in a series of past convictions, the punishment appears to fit the crime." United States v. Flores-Machicote, 706 F.3d 16, 21 (1st Cir. 2013). "If the court concludes that an asymmetry exists which results in a substantial underestimation of the defendant's criminal history, it may vary the sentence upward to reflect past leniency."[9] Id. In

_____

the issue. See Randall v. Laconia, NH, 679 F.3d 1, 5 (1st Cir. 2012).

[9] A caveat: it would not be permissible if a district court "explicitly fashioned a federal sentence in order to influence the manner in which a sentence imposed by a local court was implemented." United States v. Santiago-Rivera, 594 F.3d 82, 86

particular, the court may consider, as it seems to have done here, whether the leniency of a past sentence led to the defendant's recidivism such that a stronger sentence may now be required.  Id. at 22 & n.2.[10]

And though the judge stated a few times that "I cannot be a softy," or something along those lines -- another thing Romero-Galindez is not happy with -- we do not see a problem.  The sentencing transcript shows that the judge, as opposed to fretting over public opinion, was concerned with the fact that a lenient or so-called soft sentence would not serve as a general deterrent.  The judge repeatedly made this point, questioning what disincentive value a statutory minimum sentence would have.[11]  The goal of "afford[ing] adequate deterrence to criminal conduct," one of the enumerated § 3553 factors, is a legitimate concern.  18 U.S.C. § 3553(a)(2)(B);  see also  Flores-Machicote, 706 F.3d at 23

_____

(1st Cir. 2010).

[10] Though the court expressed surprise that two of Romero-Galindez's first degree murder charges had been reclassified to second degree, likening it to a "miracle," the judge repeatedly indicated that he respected the Puerto Rico court and was not second guessing the route it went.

[11] The judge stated of the recommended fifteen-year sentence: "It is not a deterrent, because then it gives the image to everyone else . . . my next case comes in, a murderer, four murders, and he says, 'Judge, you remember Angel Romero-Galindez . . . He's got four murders, Judge.  One of them which was a murder and a carjacking.  And, you know, Judge, you know what you did?  You gave him the minimum.'"  He went on, theorizing that the families of the four murder victims might say: "Boy that judge is a softy.  There's no deterrence any more in the federal system because he gave him the minimum, having four murders as a background to the AK-47."

-21-

("Deterrence is widely recognized as an important factor in the sentencing calculus.").

That ends this aspect of the matter. Romero-Galindez had a history of violent crimes and, upon impermissibly leaving the state custody that those crimes landed him in, got his hands on an AK-47. We scarcely think it was unreasonable for the district judge to think a statutory minimum sentence was not adequate. Sentences are not one size fits all, instead "there is almost always a range of reasonable sentences for any given offense." United States v. Santiago-Rivera, 744 F.3d 229, 234 (1st Cir. 2014) (internal quotation marks omitted). Romero-Galindez's sentence falls well within that range.

## CONCLUSION

Discerning no error that would either invalidate Romero-Galindez's plea, or require vacating his sentence, we affirm.